**Freddie Lee BENNETT, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

July 1, 1975.

Certiorari Denied by Supreme Court Sept. 22, 1975.

Robert M. Stivers, Jr., Ronald E. Hedges, Knoxville, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, for defendant in error.

OLIVER, Judge.

## OPINION

On the 24th of September 1973, the Knox County grand jury returned two separate indictments against the defendant, one charging him with attempting to commit burglary by attempting to break and enter in the nighttime a motel room rented to one Richard Garrett, with the intent to commit larceny (TCA §§ 39–603, 39–901), and the other with unlawfully carrying a pistol with the intent to go armed (TCA § 39–4901). Without any indication of objection, the two cases were tried together since both were grounded upon a single event. Convicted in both cases, the defendant was

sentenced to not less than two nor more than five years upon the attempted burglary charge, and to a fine of $50 for carrying a pistol. Represented here by the same two attorneys who represented him by appointment in his trial, the defendant has brought his cases to this Court by an appeal in the nature of a writ of error contesting the validity of his convictions and his sentence for the attempted burglary.

By his third and fourth Assignments of Error the defendant challenges the sufficiency of the evidence as to each of the convictions.

In summary, the evidence adduced by the prosecution established that the night of July 19–20, 1973, officers of the Knoxville Police Department established surveillance of the Magnolia Motel, suspecting that a burglary might be committed there. Officer Sands was in a room of the motel, looking through a slightly-opened door, from which position he could view the entrances to the rooms on one wing of the L-shaped building. The motel was well lighted by electric lamps in front of the rooms.

About 3:00 a. m., Officer Sands saw a black male, whom he identified as the defendant, approach the row of rooms from the far end of the building. The defendant peered through the window of each of the rooms, and when he got to room number 10 (the third in the row of rooms) he first looked through the window and then went to the door and put his left hand into his pocket and withdrew it. He then bent down next to the door, placed his right hand on the door knob, and made a "jiggling" motion of the knob with his left hand. Observing all of this, Officer Sands called his superior, Captain Patty, on his portable radio. When the dispatcher asked him to repeat his message, his radio made a loud blaring sound. The defendant then stood up suddenly, removed his hands from the door knob, and pulled something out from under his belt and threw it toward shrubbery behind him. He then ran and was cornered and captured almost immediately in the alley behind the motel.

The object which Officer Sands saw the defendant take from his belt and throw into the bushes was dark colored and appeared to be five or six inches long, but this officer did not get a sufficient view of it to tell what it was. So Officer Sands asked Officer Dunaway to look in the area where the object had landed, and there, beside a bush some 10 feet from the entrance to room number 10, he found a loaded .22 caliber blue steel pistol. Later test firing by the police demonstrated it to be in working order, although it was dirty.

It was stipulated that room number 10 of the motel was rented to Richard Garrett on the night in question and that no one else was invited or given permission to enter that room that night. Through inadvertence no fingerprints were taken from the door knob or the pistol, the investigating officer assuming they had already been dusted for prints.

Testifying in his own behalf, the defendant said that in the Clover Leaf Club near the motel he heard earlier in the evening that a wine-drinking and marijuana-smoking party was being held at the motel by some persons unknown to him; that no one is invited and "Everybody goes there," and he went looking for the party at the motel and walked down the row of rooms hoping to see or hear in which room it was in progress; and that when he neither heard nor saw any party, he turned and started walking back to the far end of the motel and heard a door slam and saw a policeman running toward him. He claimed that he did not peep into any of the rooms but "might have turned my head that way," that he never touched the door knob of room 10, that he did not hear any radio call, and that he did not at any time have the gun found in the bushes and that he did not throw it there.

The defendant's third Assignment assails the sufficiency of the evidence to convict him of an attempt to commit a felony,

particularly putting in issue whether the State proved the necessary intent to sustain his conviction for that offense. In 1 Wharton's Criminal Evidence (13th Ed.) § 6, p. 5, the rule is stated that: "By the nature of things, some elements of an offense can be established only by circumstantial evidence, such as the defendant's knowledge or intent."

■ From the nature of the defendant's actions at the door to room 10 of the motel, his peering through the windows of the other rooms, his flight when he became aware of the presence of others nearby by hearing the noise of the policeman's radio, and his patently flimsy and specious explanation of his presence and actions at that time and place, the jury concluded, and justly so, that his burglarious intent was plainly demonstrated.

Our Supreme Court has recently spoken of the elements essential to constitute an attempt to commit a crime. In *Hall v. State*, 490 S.W.2d 495 (Tenn.S.Ct.1973), the Court said:

> "An attempt to commit a crime requires three elements: (1) the intent to commit a specific crime; (2) an overt act; and (3) failure to consummate the intended crime. 1 Wharton, Criminal Law and Procedure, § 71 at 151–152 (1957). It is a general proposition of the criminal law, however, that 'circumstantial evidence may determine . . . such facts or elements as the existence of an intent . . .' 3 Wharton, Criminal Evidence § 980 at 467–468 (1955). In fact, intent can rarely be shown by direct proof and must, necessarily, be shown by circumstantial evidence. While our cases say that all elements of a crime can be proved by circumstantial evidence, *McClary v. State*, 211 Tenn. 46, 362 S.W.2d 450 (1962); *Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959); *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958), we have no case directly on the effect of such facts as were proved in this case.

> "In *State v. Morelock*, 164 N.W.2d 819 (Iowa 1969), the defendants were charged with attempt to break and enter a business establishment with intent to commit larceny. The evidence showed that when apprehended the defendants were attempting to gain illegal entry into a closed business establishment, they had damaged the door and lock by employing force, and they were apprehended at a time when entry was almost effected. They had in their possession gloves, a flashlight, a screwdriver, and a crowbar. The court held that the intent to steal could be inferred from the actual breaking and entering of a building which contains things of value or from an attempt to do so. A sample of other cases so holding is as follows: *People v. Nelson*, 89 Ill.App.2d 84, 233 N.E.2d 64 (1967); *State v. McClelland*, 164 N.W.2d 189 (Iowa 1969); *State v. Jones*, 143 Mont. 155, 387 P.2d 913 (1963); *State v. Smith*, 8 Ohio Misc. 148, 221 N.E.2d 627 (1966); *Hutchinson v. State*, 481 S.W.2d 881 (Tex. Cr.App.1972).

> "These and other authorities warrant us in stating as a general proposition that where one is apprehended, attempting forcibly, or with present means of force, to gain illegal entry into a residence or a building in which there is property which is the subject of larceny, a jury would be warranted in inferring, in the absence of an acceptable excuse, that the entry was made, or attempted, with intent to commit larceny."

See also: *Long v. State*, 478 S.W.2d 919 (Tenn.Crim.App.1972).

■ The defendant's fourth Assignment questions the sufficiency of the evidence to warrant and sustain the verdict of the jury finding him guilty of carrying a pistol with the intent to go armed. Obviously the jury was satisfied beyond a reasonable doubt, as we are, that the evidence that the defendant threw an object into the bushes and a pistol was found where the object landed was sufficient to establish that he was carrying the pistol at that time and place.

By the express terms of the statute in question (TCA § 39–4901), the offense proscribed is carrying a pistol or revolver or other specified weapon *with intent to go armed.* That is the gravamen of the offense. Without the intent or purpose of being or going armed, the offense described in this statute cannot be committed. *Liming v. State,* 220 Tenn. 371, 417 S.W.2d 769 (1967). It is necessary in such cases for the State to prove the accused's intent and purpose in carrying the weapon was to be and go armed, because the mere act of doing so may be lawful and does not establish criminal intent and does not create a presumption of guilt and does not deprive him of his presumption of innocence. *Liming v. State,* supra.

However, the necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proved by the circumstances surrounding the carrying of the weapon. As the Court stated in *Hill v. State,* 201 Tenn. 299, 298 S.W.2d 799 (1957), "We gather the purpose of going armed from the facts of each particular case." In the present case, upon the facts and circumstances shown in the proof, the jury was well warranted in finding that the defendant was carrying the pistol with the intent of going armed, intending to use it in the burglary.

Considered in the light of the historic rules governing appellate review of the evidence in criminal cases when its sufficiency is challenged, to which we are bound to adhere, *Webster v. State,* 1 Tenn.Crim.App. 1, 425 S.W.2d 799; *McGill v. State,* 4 Tenn. Crim.App. 710, 475 S.W.2d 223, we cannot say that the evidence preponderates against the verdict of the jury and in favor of the defendant's innocence in either case.

The alleged error raised in the defendant's first Assignment is based upon the above-mentioned incident when Officer Sands told Officer Dunaway to examine the area in the bushes where the gun was found. When Officer Dunaway was testifying and started to relate what Officer Sands said to him, the court sustained defense counsel's objection and added the admonishment, "Don't say what somebody else said." Officer Dunaway then testified that after talking with Officer Sands, he found the above-described gun a few feet from room 10 of the motel. On cross-examination of this witness, defense counsel interrogated him in detail and by use of a diagram brought out that he found the pistol lying beside a bush about 10 feet from the door of room 10 and that the weapon, including the inside of the barrel, was in a dirty condition. On re-direct examination, over defense objection, Officer Dunaway answered affirmatively when asked if Officer Sands directed him to go to a particular place, and said that was where he found the weapon.

It is claimed that this instruction by Officer Sands was inadmissible hearsay.

Hearsay testimony has been defined many times by text writers and the courts. We quote some of them.

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *McCormick, Law of Evidence § 225, p. 460.*

"Hearsay evidence does not derive its value solely from the credit to be given to the witness testifying, but rests in part on the veracity and competence of some other person. It is evidence offered in court by a witness which is based not on his own knowledge, but on what some other person has stated, and the statement is offered to show the truth of its content." *2 Wharton's Criminal Evidence (13th Ed.) § 265, pp. 3–4.*

One of the cases cited as authority by Wharton is *Argetakis v. State,* 24 Ariz. 599, 212 P. 372, in which that Court said:

"The ultimate test as to whether or not a statement is hearsay is whether the wit-

ness may be cross-examined concerning the fact about which he testifies."

See also: *Paine, Tennessee Law of Evidence §§ 47–49.*

■ Since a mere instruction or request or order by one person to another to do something obviously is not a statement of fact, testimony by a witness that he heard the instruction or request or order cannot without more be hearsay. It depends in no way on the veracity or credibility of the out-of-court declarant; it merely relates the fact that the other person made the statement, and makes no assertion with reference to its truth and is not offered for that purpose. Upon the same familiar principle, no hearsay rule is involved in admitting a newspaper in evidence to prove only that a certain article or advertisement appeared therein. This Assignment is untenable.

■ Also unfounded is the second Assignment, by which the defendant complains that the trial court erroneously failed to grant his motion for a mistrial because the Assistant District Attorney General asked him on cross-examination: "Now, Mr. Bennett, you're the same Freddie Lee Bennett that was convicted here in this Court on the 12th of February, 1973 involving an incident in which you broke into room number nine of the Magnolia Motel and was convicted of armed robbery and rape?" The Court sustained defense counsel's objection and excused the jury during argument on the motion for a mistrial, at the conclusion of which the court overruled that motion, then reminded the jurors that the defendant did not answer that question and instructed them to "completely disregard the question and draw no implications whatsoever from it." Thus, the trial judge's instruction to the jury cured any possible error committed by the Assistant District Attorney General in asking the question. For there is a presumption that the jury does not disregard the court's instructions not to consider inadmissible evidence. *O'Brien v. State*, 205 Tenn. 405, 326 S.W.2d 759; *Sullivan v. State*, 513 S.W.2d 152 (Tenn.Crim.App.1974); *Klaver v. State*, 503 S.W.2d 946 (Tenn.Crim.App.1973); *Howard v. State*, 501 S.W.2d 573 (Tenn. Crim.App.1973).

■ Finally, the defendant complains about the sentence assessed by the jury in the attempted burglary case. He insists that sentence "shows a complete disregard for the facts of the case, and a highly prejudicial decision made on factors not involved in the proof in the cause." In other words, the defendant is saying, in effect, that sentence was so excessive as to show prejudice and malice and unaccountable caprice on the part of the jury. That sentence is authorized by TCA § 39–603, the statute upon which the attempted burglary indictment was based. Where the sentence imposed is within the applicable statutory limits of punishment, a claim that the jury was corruptly motivated by passion, prejudice and caprice must be rejected. *Hunter v. State*, 222 Tenn. 672, 440 S.W.2d 1; *Headrick v. State*, 519 S.W.2d 403 (Tenn. Crim.App.1974); *Howard v. State*, 506 S.W.2d 951 (Tenn.Crim.App.1973); *French v. State*, 489 S.W.2d 57 (Tenn.Crim.App. 1972); *Snowball v. State*, 477 S.W.2d 240 (Tenn.Crim.App.1971).

Affirmed.

DUNCAN, J., who was sitting as a special judge of this Court by designation of the Chief Justice of the Supreme Court, did not participate in the hearing and decision of this case.

MITCHELL, J., concurs.