# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1999

FILED

May 26, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9807-CR-00279** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **DAVIDSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. THOMAS H. SHRIVER,** |
| **LEWIS L. BELL, a.k.a.** | ) | **JUDGE** |
| **LEWIS COLEMAN, a.k.a.** | ) | |
| **LOUIS LEE INGRAM,** | ) | |
| | ) | |
| Appellant. | ) | (Burglary, Criminal Impersonation) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF DAVIDSON COUNTY

FOR THE APPELLANT:

JEFFREY A. DeVASHER
Assistant Public Defender

BRENT T. WHITE
Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
425 Fifth Avenue North

VICTOR S. JOHNSON
District Attorney General

NICK BAILEY
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Lewis L. Bell, appeals from his convictions for burglary and criminal impersonation. On appeal, he argues (1) that the evidence was insufficient to convict him of burglary or criminal impersonation, (2) that the trial court erred by admitting the testimony of a fingerprint specialist, and (3) that the trial court erred by instructing the jury that it could "weigh and consider" the meaning of a sentence of imprisonment. Because we find no merit in Defendant's three issues, we affirm his convictions.

## I. SUFFICIENCY OF THE EVIDENCE

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate

inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

The facts presented at trial reveal that a silent alarm was tripped in a Nashville sign-making business, C&D Safety Company, in the mid-afternoon of September 28, 1996. Metropolitan Nashville-Davidson County Officer Kevin Caperton received the dispatch and investigated the premises. He testified that the business is open to the street in two places: a door for foot traffic and a door for vehicle traffic. The rest of the building, including a machine shop, is surrounded by a chain-link and barbed-wire fence approximately eight feet high.

Officer Caperton concluded from his investigation that in order to enter the building, a person must unlock the padlocked doors with a key, cut the padlocks, or scale the fence. Caperton further testified that following the first alarm, he found no signs of entry—that the building appeared secure.

Approximately two hours later, the police dispatcher notified Officer Caperton that the silent alarm at C&D had activated again. Upon his second investigation of the premises, Caperton found that one of the doors to the machine shop, a door which was completely within the chain-link, barbed-wire fence, was open. At that time, Caperton requested someone from the security service to open the building. Caperton testified that once inside, he concluded

from the appearance of the machine-shop desk that someone had "gone through" materials on the desk and in the drawers. As he prepared to leave, the officer noticed that the metal ring for the door's padlock had been cut.

At 8:30 p.m. the same evening, Officer Caperton received word of a third alarm at C&D Safety Company. Because he had anticipated a third alarm, Caperton was patrolling nearby and arrived at the scene quickly. The officer parked short of the building and walked quietly to the premises. He heard the door to the machine shop opening or closing, so he moved to a position where he could see that door. He then saw Defendant running away from the door toward the fence. As Caperton observed Defendant climb the fence, he broadcasted to other officers a description of Defendant and his clothing. Defendant dropped to the ground and began to walk through an alley.

Officer Kelvin Lusk apprehended Defendant in the alleyway. Lusk drew his pistol and ordered Defendant to the ground as Defendant asked, "What's going on? Man, I haven't done anything." According to Lusk, Defendant was sweaty and out of breath, and he carried something in his hand.[1] When asked his name, Defendant replied that it was "Lewis Bell."

Gwyn Gregory testified next for the State, and she stated that she had access to the records of the Metropolitan Police Department, that she checked

---

[1] The nature of that item was apparently not revealed at trial, though officers testified that they found no burglary tools on Defendant's person at the time of his apprehension.

those records upon request to determine Defendant's identity, and that she discerned Defendant's true name was not Louis Bell, but was Louis Ingram.[2]

Finally, Todd Carson, presumably an owner of C&D Safety Company, testified for the prosecution, describing the inside of the business as "ransacked," with items "strewn around." He testified that all of the desk drawers were open and that the lock and door had been broken off of a cabinet. Carson stated that he left the business at approximately noon the day of the intrusion, but he did not state whether any employees were still present in the building at that time or whether anyone could have been in the building between noon and the time of the crime. Carson also testified that he did not know Defendant and that Defendant did not have permission to be on the premises. To Carson's knowledge, no items were taken from the business, although he testified that he did not have an inventory of the smaller items and would not know if any were missing.

*A. Burglary*

Tennessee Code Annotated § 39-14-402 reads, "A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public with intent to commit a felony, theft, or assault . . . ." Tenn. Code Ann. § 39-14-402(a)(1). Defendant challenges the finding that he intended to commit a theft, and he alternatively asserts that the State did not establish his identity as the perpetrator.

---

[2] Defendant's first name is spelled Louis and Lewis in the record.

Defendant's argument that he did not possess an intent to commit theft must fail. This Court recently reaffirmed the pre-1989 principle that "a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." State v. Ingram, 986 S.W.2d 598 (Tenn. Crim. App. 1998) (citing Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973)); see Hall, 490 S.W.2d at 496; State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994); State v. Avery, 818 S.W.2d 365, 367-68 (Tenn. Crim. App. 1991); State v. Burkley, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990); Bennett v. State, 530 S.W.2d 788, 791 (Tenn. Crim. App. 1975) (quoting Hall, 490 S.W.2d at 496).

In Ingram, the defendant entered the victim's home garage by breaking a hole in the wall. Id. The proof showed that the garage contained lawn tools, a ladder, and a car. Id. Likewise, in this case, Officer Caperton saw Defendant immediately after the building's silent alarm activated, inside the eight-foot high, chain-link and barbed-wire fence surrounding the business, running from the same door that had been vandalized earlier in the day.

The evidence presented by the company's proprietor, Todd Carson, showed that the building Defendant entered contained a desk, locked cabinet, and small hand tools. The desk had been ransacked and drawers were open, and the lock and door had been broken from the cabinet. Carson stated that due to the lack of inventory for the small tools, he could not determine if any items were missing. We conclude that this evidence was sufficient to circumstantially show that Defendant intended to commit a theft inside C&D Safety Company.

Defendant next argues that the State failed to establish that he committed the burglary. This issue also lacks merit. Officer Caperton saw the perpetrator running from the building and broadcasted a description of Defendant's body, clothing, and direction of flight to other officers. Once other officers apprehended Defendant, Caperton identified him as the perpetrator. This was sufficient to permit the jury to conclude that Defendant perpetrated the burglary.

*B. Criminal Impersonation*

Tennessee Code Annotated § 39-16-301 reads, "A person commits criminal impersonation who, with intent to injure or defraud another person . . . [a]ssumes a false identity . . . ." Tenn. Code Ann. § 39-16-301(a)(1). Defendant argues that the evidence at trial did not establish that he intended to injure or defraud another person "when giving police the name Louis Bell, nor does it establish that the name Louis Bell was a false identity." We disagree.

The State cites State v. Brooks, 909 S.W.2d 854 (Tenn. Crim. App. 1995), in support of its argument that the State was not required to prove why Defendant gave officers a false name. The State contends that instead, it was sufficient to show that Defendant intentionally gave police a false name. In Brooks, this Court stated, "To establish the offense of criminal impersonation, the state is not required to show proof of why the defendant sought to defraud the Jackson Police Department, only that he intended to misrepresent his true identity." Id. at 859.

We believe that the facts heard by the jury in this case are analogous to Brooks such that we must adhere to its result. The jury heard proof that

Defendant represented himself to police as Louis Bell and that his "true name" was not Louis Bell. Under <u>Brooks</u>, this evidence was sufficient to permit the jury to convict him of criminal impersonation. <u>See</u> <u>id.</u> at 859; <u>State v. Thomas E. Bradshaw</u>, No. 01C01-9609-CR-00406, 1997 WL 578963, at *4 (Tenn. Crim. App., Nashville, Sept. 19, 1997); <u>State v. Charles Lee White</u>, No. 02C01-9501-CC-00025, 1995 WL 555044 (Tenn. Crim. App., Jackson, Sept. 20, 1995).

However, we note that the result might have been different had Defendant placed before the jury evidence that his mother's name had at one time been Bell and that Defendant had been previously convicted under the name Bell.[3] Had Defendant been able to show the jury that giving officers the name Bell would not hinder efforts to identify and prosecute him, but instead lead prosecutors to former convictions, the evidence could have refuted any inference of an intent to defraud.

Furthermore, had Defendant been able to cross-examine witness Gwyn Gregory, he could potentially have shown that the State, at that time, did not know Defendant's "true name," but knew only that he had also been convicted under the name Louis Ingram. Defendant argues that because he could not cross-examine Gregory, his right to confront the witness was violated. However, Defendant's inability to cross-examine Gregory was self-imposed: Had he been willing to disclose his prior convictions to the jury, Defendant could have argued, through a thorough cross-examination of Gregory and through his own testimony, that using the name Bell could not be construed as intending to defraud law

---

[3] Although this information was not presented to the jury, it is contained in other parts of the record on appeal.

enforcement. The confusion created by the Defendant's prior use of more than one identity complicated the Defendant's trial tactics.[4]

## II. TESTIMONY BY GWYN GREGORY

Defendant challenges the trial court's decision to permit Gwyn Gregory to testify that Lewis Bell was not Defendant's "true name." Defendant claims that admitting Gregory's testimony impaired his right to confront the witness because had he cross-examined Gregory, he would have been forced to reveal his past criminal convictions. Furthermore, he argues that Gregory's testimony was not relevant; and even if it was relevant, it was more prejudicial than probative.

"Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." Tenn. R. Evid. 401. The determination of whether proffered evidence is relevant is left to the discretion of the trial judge. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). The State responds that Defendant is "attempt[ing] to elevate a matter of trial tactics to the level of a constitutional question." We agree with that statement and the next: "[Defendant], through his attorney, elected not to cross examine Ms. Gregory." (Emphasis added.)

---

[4] Defendant's prosecution in these cases demonstrates the confusion. He was indicted as Louis Lee Ingram, a.k.a. Lewis Lee Bell, a.k.a. Louis Lee Bell. He was convicted under the name Louis Coleman (his mother's married name), and the judgment lists Bell and Ingram as aliases. A jury-out discussion revealed that Defendant had also been convicted under the name of Coleman in the past, in addition to the names Ingram and Bell. The presentence investigation report discloses that "his fingerprints showed him to be Lewis Lee Coleman."

That Defendant had been convicted and fingerprinted under a name other than Bell at least six times in the past is probative of the issue of whether Bell was an false name, and the evidence was, therefore, relevant. In addition, because the trial court recognized that Gregory's full testimony would indeed be prejudicial to Defendant by implying that he had a criminal history, the court properly limited the substance of her testimony. We cannot conclude that the trial court committed an abuse of discretion by admitting Gregory's statements.

## IV. TRUTH IN SENTENCING

Finally, Defendant challenges the trial court's instruction to the jury that it may "weigh and consider" a sentence of imprisonment. Former Tennessee Code Annotated § 40-35-201 mandated such an instruction: "When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses." Tenn. Code Ann. § 40-35-201(b)(2)(A)(i). Defendant made such a request for the trial court to inform the jury of possible penalties.

In State v. Rachel Marie Green, No. 01C01-9706-CR-00223, 1998 WL 708915 (Tenn. Crim. App., Nashville, Oct. 12, 1998) (for publication), this Court followed the instruction of the Tennessee Supreme Court in State v. King, 973 S.W.2d 586 (Tenn. 1998), on this issue. As in this case, the defendant in Green challenged the trial court's instruction that the jury should "weigh and consider" a sentence of imprisonment. Green, 1998 WL 708915, at *26.

We noted in Green that the King court held,

> [F]ormer Tennessee Code Annotated § 40-35-201(b)(2) . . . was not impermissibly vague, did not mandate a misleading jury instruction, and did not require a jury instruction on matters irrelevant to a Defendant's guilt or innocence. The court concluded that the jury instruction given in King violated the due process clause of neither the United States nor the Tennessee Constitution.
>
> . . . . In King, although the supreme court stated that it was significant that the jury had been instructed that the sentencing information was "for your information only," the court specifically stated that sentencing and parole information had a "measure of relevance" to the jury's function in determining guilt or innocence.

Id. at *27 (citations omitted). Moreover, we stated in Green,

> The challenged jury instruction was mandated by the legislature. The constitutionality of the statute has been upheld by our supreme court. The supreme court rejected the argument that sentencing and parole information are entirely irrelevant to the jury's function of determining guilt or innocence. We therefore conclude that the trial judge did not err by giving the jury instruction mandated by former Tennessee Code Annotated § 40-35-201(b)(2).

Id. We find no reason to revisit the Green decision, and we conclude that this issue lacks merit.

Because we find no merit in Defendant's assignments of error, we affirm the verdict of the jury and judgment by the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
JAMES CURWOOD WITT, JR., JUDGE