IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2001

## STATE OF TENNESSEE v. DONALD STEVE SIKES

**Direct Appeal from the Circuit Court for Madison County**
**No. 00-51    Donald H. Allen, Judge**

---

**No. W2000-02960-CCA-R3-CD - Filed September 6, 2001**

---

As the result of an altercation with the manager of a fast food restaurant, the defendant was convicted by a jury of aggravated assault, a Class C felony; assault, a Class A misdemeanor; unlawful possession of a handgun while under the influence, a Class A misdemeanor; and the unlawful possession of a weapon with the intent to go armed, as a Class C misdemeanor. He was sentenced by the trial court to an effective sentence of four and one-half years, with 150 days in confinement, and the remainder of his time on intensive probation. Following the denial of his motion for a new trial, the defendant filed a timely appeal to this court, raising the issues of whether the evidence was sufficient to support his convictions of possession of a weapon with the intent to go armed and possession of a handgun while under the influence, and whether the trial court erred in enhancing his aggravated assault sentence to four and one-half years and sentencing him to intensive probation. Based on a careful review, we conclude that the evidence was sufficient to support the defendant's convictions, and that the trial court did not err in enhancing the defendant's sentence for aggravated assault. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

C. Michael Robbins, Memphis, Tennessee (on appeal); George Morton Googe, District Public Defender; and Vanessa D. King, Assistant Public Defender (at trial and on appeal), for the appellant, Donald Steve Sikes.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**DISCUSSION**

On the evening of September 28, 1999, the defendant, Donald Steve Sikes, placed an order at the drive-through of a Church's Chicken in Jackson, Tennessee. Church's Assistant District Manager Charles Helloms, who was inside when the defendant was served, noticed as he was leaving the restaurant that the defendant was still at the drive-through window. Concerned about the length of time that the defendant had been in the drive-through line, Helloms approached to ask if there was a problem. According to Helloms, the defendant responded with anger and violence, first pulling out a handgun and threatening to shoot him, and then following Helloms as he retreated to his car and striking him in the face with his hand. The defendant was subsequently charged with aggravated assault, assault, unlawful possession of a handgun while under the influence, unlawful possession of a weapon with the intent to go armed, and public intoxication.

At trial, Helloms testified that when he left the restaurant he pulled into the drive-through lane, where he saw the defendant still at the drive-through window talking to two employees. Since he knew that the defendant had been in the lane approximately twenty to twenty-five minutes and had already been served, he pulled his car alongside the defendant's pickup truck, got out, and walked over to inquire if everything was all right. Helloms said that he was in uniform, and that he introduced himself as the restaurant's assistant district manager. The defendant responded by asking him "who in the fuck" he was. Helloms repeated that he was the assistant district manager and was trying to determine if there was a problem. The defendant replied that he did not care who he was, and that he would shoot him because he was standing too close to his truck. When Helloms failed to move, the defendant, reaching behind him, pulled out a small, black handgun, pointed it at Helloms, and said something along the lines of "You don't believe I'll shoot?" Helloms testified that, without thinking, he replied, "Go ahead," but he was immediately fearful that the defendant would, in fact, shoot him. Instead, the defendant laid his gun down, and Helloms said, "Okay, fine," and walked back to his car and got in. As he was about to close his car door, the defendant, who had followed him, struck him in the face with his hand. The defendant then returned to his truck at the drive-through window, where store employees engaged him in conversation until the police arrived.

Helloms acknowledged that the defendant had asked him to move his car when he first approached him at the drive-through window, and that he had refused. He denied, however, that his car had been blocking the defendant's vehicle, testifying that he had parked on the outside of the drive-through lane. Helloms also denied that he had had a gun in his car.

Melissa Ray, an employee of the Church's Chicken restaurant in September 1999, witnessed a portion of the encounter between the defendant and Helloms. She testified that the defendant had been in the drive-through about twenty-five to thirty minutes and had already been served when Helloms approached and introduced himself as the district manager. She heard the defendant reply that he did not care who Helloms was, and that Helloms "needed to move away from his 'MF' truck" before he ran him over. She watched Helloms walk to his car, and then went to the back of the restaurant to call the police. When she returned to the window, the defendant told her, "I slapped the MF boy." Ray said that she saw a gun beside the defendant on his truck seat, and that she later

saw him place it in his glove box.  Although she had not smelled alcohol, she thought that the defendant had been drinking because he was "hostile and edgy."

Officers Chad French and Douglas Manaseri of the Jackson Police Department responded to the incident.  Both testified to smelling a strong odor of alcohol about the defendant.  Officer French described the defendant's eyes as "bloodshot and a little glassy" and said that the defendant admitted that he had been drinking.  Officer Manaseri said that the defendant's eyes were very red and that his speech was slurred.  A loaded .22 semi-automatic handgun was recovered from the glove box of the defendant's vehicle.  The officers acknowledged that they did not find any alcohol in the vehicle, and that no field sobriety, Breathalyzer, or blood alcohol tests were performed on the defendant.  They also admitted that they had not searched Helloms's car for a gun.

The defendant testified that he had stayed in the drive-through lane because he had placed a second order while at the drive-through window.  He said that Helloms was standing beside the wall of the restaurant, near the drive-through, and Helloms's car was blocking the exit path of his truck, when he first pulled up to pick up his order. Helloms was staring in his window, and he asked if he could help him.  Helloms told him that he was trying to catch his employees giving away free food.  He told Helloms that they were not giving any free food to him and to "get out of [his] face" and move his car.  Helloms failed to move, however, and they began arguing and cursing at each other.  The defendant said that in the midst of the argument, he lifted up his armrest to make room for his food, in the process exposing his handgun that his ex-wife had returned to him earlier that day.  He claimed that he had forgotten he had the gun and that when he saw it, he put it in his glove compartment. After he put the gun away, Helloms told him that he had "something" for him in his car.  Thinking that Helloms had a gun, and wanting to prevent him from reaching it, he got out of his truck and followed Helloms to his car.  At the car, Helloms shoved him, and he shoved back.

The defendant denied that he ever pointed the gun at Helloms or threatened to shoot him. He acknowledged that he had told the officers that he had been drinking, but testified that he had had only two mixed drinks approximately four or five hours earlier in the evening.  The defendant said that he suffers from diabetes, and had stopped by the restaurant because he could feel his blood sugar getting low and knew he needed to eat.  He explained that one symptom of low blood sugar is slurred speech, and said that his red face and eyes were caused by a medical condition called rosacea. He testified that he and his wife had divorced three years earlier, but she had not returned his handgun to him until that day.  He admitted that he had no permit to carry a handgun, but denied that he carried the gun with him on a regular basis.

After deliberating, the jury found the defendant guilty of aggravated assault, assault, possession of a handgun while under the influence, and possession of a weapon with the intent to go armed, and not guilty of public intoxication.  The jury imposed a fine of $2500 each for the aggravated assault and possession of a handgun while under the influence convictions, and a $50 fine for the possession of a weapon with the intent to go armed conviction.  No fine was imposed for the assault conviction.  At the conclusion of the sentencing hearing, the trial court sentenced the defendant to concurrent sentences of four years, six months on the aggravated assault conviction;

eleven months, twenty-nine days on the assault conviction; eleven months, twenty-nine days on the possession of a handgun while under the influence conviction; and thirty days on the possession of a weapon with the intent to go armed conviction. The defendant was ordered to serve 150 days in the county workhouse, with the remainder of his time on intensive probation. Following the denial of his motion for a new trial, the defendant filed a timely appeal to this court.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first raises the issue of whether the evidence was sufficient to support his convictions for possession of a handgun while under the influence and possession of a weapon with the intent to go armed. When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

### A. Possession of a Handgun While Under the Influence

Tennessee Code Annotated Section 39-17-1321, prohibiting the possession of a handgun while under the influence, provides:

> (a) Notwithstanding whether a person has a permit issued pursuant to § 39-17-1315 or § 39-17-1351, it is an offense for a person to possess a handgun while under the influence of alcohol or any controlled substance.
>
> (b) A violation of this section is a Class A misdemeanor.

The defendant contends that by expressly referring to the statutory scheme by which a private individual can become licensed to carry a handgun, the introductory clause of the statute limits its application to those individuals who hold handgun carry permits, thus making it inapplicable to him. He argues that this is the only reasonable interpretation of the statute, asserting that if the statute is held to apply to an individual without a handgun carry permit, "the statute reaches every person in Tennessee who owns handguns who is at one time or another under the influence of alcohol while actually or constructively possessing the handgun." We disagree with the defendant's analysis as to the limitation on this statute, or its broad reach if we do not accept his analysis.

A court's role in construing a statute is to ascertain and give effect to legislative intent. State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); Schering-Plough Healthcare Prods., Inc. v. State Bd. of Equalization, 999 S.W.2d 773, 775 (Tenn. 1999). Whenever possible, legislative intent is to be ascertained from the natural and ordinary meaning of the language used. Flemming, 19 S.W.3d at 197; Carson Creek Vacation Resorts, Inc. v. State, Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." State v. Blackstock, 19 S.W.3d 200, 210 (Tenn. 2000) (citing State v. Pettus, 986 S.W.2d 540, 544 (Tenn. 1999)). If the language of a statute is ambiguous, then this court must look beyond the language to adopt a reasonable construction that provides for harmonious operation of the laws. Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000). However, if the language is not ambiguous, we may apply the plain language of the statute to resolve the issue. Id.

There is no ambiguity in the statute at issue here. Rather than limiting its application to those individuals who hold handgun carry permits, the statute's introductory phrase merely removes a possible exception by expressly providing that those individuals who hold handgun carry permits are also subject to prosecution under the statute if they are found in possession of a handgun while under the influence of alcohol or a controlled substance. We are "required to construe statutes in a reasonable and logical fashion." State v. Ralph, 6 S.W.3d 251, 256 (Tenn. 1999) (citing McClellan v. Bd. of Regents of State University, 921 S.W.2d 684, 689 (Tenn. 1996)). A reasonable interpretation of this statute is that the Legislature, recognizing the danger of a person under the influence of an intoxicant not merely owning but being in possession of a firearm, criminalized such behavior.

The defendant also suggests that applying the statute to individuals not having handgun carry permits is unreasonable because it leads to the "unavoidable result" that the mere possession of a handgun while under the influence, as a Class A misdemeanor, is a more serious offense than possession of a weapon with the intent to go armed, a Class C misdemeanor. It is not this court's role, however, to question the reasonableness of the Legislature's grading of offenses. See Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000). "Instead, courts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" Id. (quoting BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). The statute's plain language provides that it is a Class A misdemeanor for an individual to possess a

handgun while under the influence of alcohol or any controlled substance. As written, the statute clearly applies to this defendant.

To find the defendant guilty of the unlawful possession of a handgun while under the influence of alcohol, the jury had only to find: 1) that he had possession of a handgun, and 2) that he was under the influence of alcohol. Viewed in the light most favorable to the State, the evidence in this case was sufficient to support the defendant's conviction of this offense. The defendant admitted at trial that he had the handgun with him and that, while at the drive-through window, he moved it from its location by his side to the glove compartment of his truck. Church's Chicken employee Melissa Ray, who engaged the defendant in conversation until the police arrived, testified that, based on his demeanor and attitude, the defendant appeared to have been drinking. Officers French and Manaseri testified that there was a "strong odor" of alcohol about the defendant, that his eyes were red and bloodshot, and that his speech was slurred. In addition, although no blood alcohol or Breathalyzer tests were performed, the defendant admitted to Officer French that he had been drinking. Thus, sufficient evidence was presented from which the jury could find that the defendant met both elements of the offense of possession of a handgun while under the influence of alcohol. This issue is without merit.

### B. Possession of a Weapon with the Intent to Go Armed

The defendant also challenges the sufficiency of the evidence in support of his conviction for possession of a weapon with the intent to go armed. Specifically, he contends that the State failed to prove that he had the specific intent to go armed. Again, we disagree.

Tennessee Code Annotated Section 39-17-1307, which prohibits the unlawful carrying or possession of a weapon, states in pertinent part that "[a] person commits an offense who carries with the intent to go armed a firearm, . . . ." Tenn. Code Ann. § 39-17-1307(a)(1) (1997). The intent of a defendant may be inferred from both direct and circumstantial evidence. See Hill v. State, 298 S.W.2d 799, 800 (Tenn. 1957); State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983); Cole v. State, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). Thus, a defendant's intent of going armed may be proven by the circumstances surrounding his carrying of the weapon. See Hill, 298 S.W.2d at 800; Cole, 539 S.W.2d at 49; Bennet v. State, 530 S.W.2d 788, 792 (Tenn. Crim. App. 1975).

In our view, the State introduced sufficient evidence in this case from which a rational trier of fact could infer the defendant's intent to go armed. Helloms testified that the defendant pulled the gun from behind his seat, pointed it directly at him, and threatened to shoot. Ray testified that she saw the gun beside the defendant on his truck seat, and that after she had talked with him and calmed him down, he put it into the glove box. When officers arrived, they found the gun to be fully loaded. From these facts and circumstances, the jury was entitled to conclude that the defendant was not just transporting the gun from his ex-wife's home to his, as he claimed, but instead was carrying it with the specific intent of going armed. This issue is without merit.

## II.  Sentencing

The defendant contends that both the length and manner of service imposed by the trial court was excessive.  He argues that the trial court erroneously applied enhancement factor (16), and failed to give appropriate weight and consideration to the mitigating factor of his long history of steady employment, in enhancing his sentence for aggravated assault to four years and six months.  He also argues that the trial court erred in ordering that he serve 150 days in confinement, with the remainder of his time on intensive probation.  Since his period of confinement has already been served, he asks that this court reduce his sentence to three years, and order that the remainder of his time be served on ordinary supervised probation.

Tennessee Code Annotated Section 40-35-401(d) provides that when an accused challenges the length, range, or manner of service of a sentence, this court is to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d) (1997).  This presumption, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  Since the trial court in this case failed to clearly articulate the enhancement and mitigating factors applicable, or how they were evaluated and balanced in determining the sentence, we review this issue *de novo*, with no presumption of correctness given to the trial court's sentencing determinations.  See State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous.   Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.  In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

The sentence to be imposed by the trial court for a Class B, C, D, or E felony is presumptively the minimum in the range unless there are enhancement factors present.  Tenn. Code Ann. § 40-35-210(c) (1997).  Procedurally, the trial court is to increase the sentence within the range based on the existence of enhancement factors, and then reduce the sentence as appropriate for any mitigating factors.  Tenn. Code Ann. § 40-35-210(d) & (e) (1997).  For his aggravated assault conviction, a Class C felony, the defendant was subject to a sentence ranging from three to six years.  Tenn. Code Ann. § 40-35-112(a)(3) (1997).  Although it is not completely clear from the record, the trial court apparently applied enhancement factors (1), that the defendant has a previous history of

criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (16), that the crime was committed under circumstances under which the potential for bodily injury to a victim was great, see Tenn. Code Ann. § 40-35-114(1) & (16) (1997), to enhance the defendant's sentence for aggravated assault to four years, six months. Factor (16), however, may not be applied when the "proof that the potential for bodily injury was great would also prove an essential element of the offense charged." Jones, 883 S.W.2d at 603. We agree with the defendant that the trial court's application of enhancement factor (16) in this case was error, since the factor was inherent in his offense of aggravated assault.

The trial court applied enhancement factor (1) based on the defendant's 1987 misdemeanor conviction for DUI. The trial court apparently gave this factor substantial weight, expressing its concern that the defendant's prior conviction, similar to his present offenses, also involved the abuse of alcohol. The defendant argues that the trial court erred in assuming facts about his prior conviction that were not in the record. We disagree. The transcript of the sentencing hearing reveals that the trial court merely noted, appropriately, that the defendant's previous conviction for DUI also involved his consumption of alcohol and driving. We find no error in the trial court's application of this factor, or in the heavy weight to which it was apparently assigned.

The defendant argues that the trial court erred in failing to give greater weight to the mitigating factor of his long history of steady employment and good work ethic. The trial court noted the defendant's "pretty good work history," but obviously gave it little weight. We find no error in this determination. At the time of his sentencing hearing, the defendant was employed at a furniture store. According to defendant's counsel, he was self-employed from 1995 to 1999. His presentence report shows that from 1993 to 1995 he worked as a deputy jailer with the Carroll County Sheriff's Department, and from 1989 until 1993, as a guard at the Madison County Penal Farm. In our view, the defendant's work history was entitled to very little, if any, weight in mitigation.

In sum, we conclude that although enhancement factor (16) was inappropriately applied to the defendant's sentence for aggravated assault, enhancement factor (1) was applicable and entitled to great weight. We further conclude that the defendant's history of employment was entitled to very little, if any, weight in mitigation. The applicability of enhancement factor (1), combined with the absence of any strong factors in mitigation, justifies the enhanced sentence of four years, six months.

The defendant also argues that the trial court abused its discretion in ordering that he be placed on intensive probation following his release from confinement, and asks that this court modify his sentence to "ordinary supervised probation." As part of the conditions of his probation, the trial court ordered, *inter alia*, that the defendant attend an alcohol counseling and treatment program; participate in an anger management class; and be subject to a 6:00 p.m. to 6:00 a.m. curfew. The record reflects that the trial court considered the facts and circumstances of the case and the defendant's history, including his prior alcohol-related conviction, in ordering the special conditions and terms of his probation. The trial court is granted broad discretion in its imposition of conditions of probation. See Tenn. Code Ann. § 40-35-303(d) (1997); Stiller v. State, 516 S.W.2d

617, 620 (Tenn. 1974). Under the circumstances of this case, we find no abuse of discretion by the trial court, and therefore decline to modify the conditions of the defendant's probation.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE