# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 5, 2013 Session

## STATE OF TENNESSEE v. DEMARIO DARNELL THOMPSON

**Appeal from the Circuit Court for Madison County**
**No. 11-198   Donald H. Allen, Judge**

---

**No. W2012-00642-CCA-R3-CD  - Filed July 15, 2013**

---

The Defendant, Demario Darnell Thompson, was convicted by a Madison County Circuit Court jury of possession of a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony, possession of marijuana with the intent to sell, a Class E felony, possession of marijuana with the intent to deliver, a Class E felony, and possession of drug paraphernalia, a Class A misdemeanor. *See* T.C.A. §§ 39-17-1324, 39-17-417, and 39-17-425 (2010).  The trial court merged the two convictions for possession of marijuana into a single count of possession of marijuana with the intent to sell.  The court sentenced the Defendant as a Range I, standard offender to four years' confinement for possession of a firearm during the commission of a dangerous felony, two years' confinement for possession of marijuana with the intent to sell, and eleven months, twenty-nine days' confinement for possession of drug paraphernalia and ordered partial consecutive sentencing for an effective six-year sentence.  On appeal, the Defendant contends that the evidence is insufficient to support his convictions.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH, and ROGER A. PAGE, JJ., joined.

Robert Hardy, Jr., Memphis, Tennessee, for the appellant, Demario Darnell Thompson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey Dean Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Brian Matthew Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the trial, Jackson Police Officer Robert Groves testified that he stopped a car a little after midnight on October 17, 2010, around Baltimore Street because the headlights and taillights were off. He said he followed the car and activated his blue lights after the car crossed Main Street at the intersection of Shannon Street and Lafayette Street in downtown Jackson. He said he could see three or four people in the car. He said Jackson Metro Narcotics Sergeant Chris Long was in the area and stopped to assist him. He knew K-9 Officers Steins and Moss were in the area and called them as a precaution.

Officer Groves testified that he approached the driver's side of the car and spoke to the driver and that Sergeant Long approached the passenger's side and spoke to the passenger. He said that the driver did not know why he was stopped and that he told the driver his headlights were off. He said that he identified the driver as Michael Douglas after obtaining his driver's license and that he cited Mr. Douglas for improper lights. He said he did not participate in a search of the car but knew the car was being searched when he was at the rear of the car talking to the driver. He said that before the search began, the passengers and the driver were asked to step out of the car and that he talked to the driver while other officers talked to the passengers and searched the car. He said he did not interact with the passengers and focused on the driver. He said he was at the scene about twenty to thirty minutes. After the search was complete, he issued a citation to the driver and allowed him to leave.

On cross-examination, Officer Groves testified that he did not recall speaking to the Defendant that night. He said that he was patrolling when he saw the car driving without headlights or taillights and that he wrote a citation to the driver for improper lights. He said that he asked for the driver's identification and that he remembered the driver was a black male in his early twenties, was about six feet tall, and weighed about 160 to 170 pounds.

On redirect examination, Officer Groves testified that he saw drugs retrieved from the passenger floorboard area of the car and displayed on the trunk. On recross-examination, he said that he was standing on the driver's side of the car toward the back when he saw the drugs. He said that it was dark outside but that all the officers had their police cruisers' lights and spot lights shining on the car. He said he could see the floorboard where the officers found things.

Jackson Police Officer Jeremy Stines testified that he was a K-9 officer and that his dog was trained to detect narcotics. On October 17, 2010, Officer Groves requested that he come to the scene on the west side of Highland. He said that Officer Groves was going to ask him to have the dog smell for narcotics around the car but that the officers received

consent to search the car. He said he searched the vehicle and found a yellow plastic bag on the front passenger floorboard close to the seat but not under it and in his plain view. He said that after he opened the bag, he saw a green leafy substance he thought was marijuana and gave the bag to Sergeant Long, who was searching the trunk. He said he could not see the contents of the yellow bag from the outside and had to open it to see inside. He said he opened the bag, looked inside, did not take anything out of the bag to examine it, and did not handle anything inside the bag. He said he did not interact with the occupants of the car. He stopped searching after he found the yellow bag. He said that after he gave the bag to Sergeant Long, he did not remember doing anything else.

On cross-examination, Officer Stines said that Officer Groves called him to the scene. He said that he did not take the dog from the car after he arrived. He said he did not know how long the search lasted and agreed it should not have lasted long because the bag was in plain view. He said three officers searched the car. He said it took him less than one or two minutes to arrive at the scene after he received the call. He said he did not have contact with the Defendant at the scene, did not know the Defendant, and did not know the Defendant to be drug dealer.

Madison County Sheriff's Sergeant Chris Long testified that he was assigned as a supervisor to the Jackson Metro Narcotics Unit. He said that on October 17, 2010, he heard on the radio that Officer Groves stopped a car at the intersection of Shannon Street and Lafayette Street and that three people were in the car. He said he responded to the area as a backup officer and approached the passenger side of the car. He said that he talked to the passenger in the front seat, that he smelled a strong odor of burnt marijuana almost immediately, and that he asked the passenger if marijuana was in the vehicle. He said that part of his training was to recognize the smell of drugs and that he was able to differentiate the smell of marijuana from other smells. He estimated that he had worked on 500 to 1000 cases involving marijuana during his career and said that he was familiar with the smell. He said that raw marijuana had more of a "green foliage-type smell" and that burnt marijuana had a "smoky musty smell." He identified the Defendant as the front seat passenger that night.

Sergeant Long testified that the passenger-side window was down and that the smell came through the window. He said that the Defendant was still in the car when he approached and that he stood beside the passenger door. He said that he told the Defendant he smelled marijuana, that he asked if marijuana was in the car, and that the Defendant denied marijuana was in the car and stated they had already smoked it. He said that he asked again if narcotics were in the car and that the Defendant stated the drugs were in the trunk. He said he had probable cause to search the car based on the smell of marijuana. He said that the Defendant told him he had a permit to carry a handgun and that he verified the

Defendant's permit was valid. He said that he asked the Defendant if the weapon was in the car, that the Defendant told him the gun was in the glove box, and that he asked the Defendant to leave it there. He said he asked the Defendant to step out of the car for officer safety and to prevent the Defendant from destroying evidence.

Sergeant Long testified that after the Defendant was out of the car, the Defendant told him the marijuana was in his sock, not the trunk. He said he asked the Defendant to place his hands on the vehicle to allow him to perform a "pat down" of the Defendant to find the marijuana. He said that he found thirty-five $100 bills and a partially smoked marijuana cigarette in the Defendant's sock. He said that he seized the money, which was folded a couple of times and wrapped with a rubber band.

Sergeant Long testified that he participated in the search of the car. He said he retrieved the marijuana cigarette from the Defendant's sock and arrested the Defendant. He stated that he turned toward the passenger door and that Officer Stines handed him a yellow plastic bag. He said he opened the bag and found marijuana, a set of digital scales, plastic sandwich bags, and an unopened two-pack of Swisher Sweets Cigarillo Cigars. He said he collected all the items and logged them as evidence. He said he found a Smith & Wesson handgun in the glove box of the car, cleared ten live rounds of ammunition from it, and logged it as evidence. He said the gun was given to the Jackson Police Department evidence technician, who collected all weapons recovered as evidence.

Sergeant Long testified that the Defendant admitted the items in the yellow bag were his and that he told the Defendant the amount of marijuana found made the charge a felony. He said that the Defendant told him the marijuana was for personal use, that he was not a drug dealer, that the sandwich bags were for his children's lunches, and that a friend had given him the scales to weigh his marijuana because he liked his marijuana cigarettes to contain exactly one gram. He said that when he weighed the marijuana with its packaging, it weighed 34.2 grams and that the Tennessee Bureau of Investigation's (TBI) measurement was 26.1 grams without the packaging. He said the marijuana was contained in a "ziplock-type" bag inside the yellow bag. He said he removed the contents of the yellow bag but did not remember what he did with the bag. He said that he spoke briefly with the other passenger. He said that another gun was found in the car, that the gun belonged to the driver, who had a valid gun permit, and that the driver and other passenger were released when nothing else was found.

On cross-examination, Sergeant Long testified that he arrived at the scene after Officer Groves. He said he had made several hundred drug arrests and knew the difference between an efficient and an inefficient investigation. He said some efficient investigations included written or recorded statements but did not agree that an investigation with written

-4-

statements was more efficient than an investigation with only oral statements. He said it may be easier to present written statements to a jury. He said that his affidavit of complaint and supplemental and incidental reports helped him remember accurately what occurred.

Sergeant Long testified that he completed an affidavit of complaint on October 17, 2010, concerning the charges against the Defendant. He said the affidavit did not contain the Defendant's statements about the marijuana being for personal use, the scales being used to ensure the Defendant's marijuana cigarettes contained one gram, and the sandwich bags being for the Defendant's children's lunches. He said that he generally wrote only the probable cause for the charges in the affidavit.

Sergeant Long testified that the incident occurred on the weekend of Lane College's Homecoming and that many people were in town. He said that when he arrived at the scene, Michael Douglas, who received the traffic citation, and another passenger whose name he did not know were in the car. He said that he only questioned the Defendant, that he did not read the Defendant his *Miranda* rights, and that he did not record the conversation. He said that the Defendant's statements were not written but that the Defendant claimed the contents of the bag.

Sergeant Long testified that he responded to assist another officer with a traffic violation, not a drug encounter. He said that he learned the smell of marijuana from on-the-job training, that he had been on the job for nine years, and that he could detect the smell of marijuana. He said the yellow bag was not tagged as evidence, that he took the contents out of the bag, and that he did not remember what he did with the bag. He said the bag was not evidence and was not illegal. He agreed the cigars and the digital scales were not illegal by themselves but said they could be used by a marijuana smoker or dealer.

Sergeant Long testified that the Defendant had a valid handgun carry permit but possessed the gun with a felonious amount of marijuana. He explained that the weight he measured and the weight the TBI measured were different because he weighed the marijuana in its packaging and the TBI removed the packaging. He said that based on the evidence, he believed the Defendant was a drug dealer. He said he did not need to know that the Defendant was a certified, licensed armed security guard to explain why the Defendant had a gun because the Defendant produced a valid gun permit. He said that the Defendant told him he worked as an armed security guard but that he did not state the information in his affidavit of complaint because it did not support probable cause. He said that he did not state in his affidavit that two other people were in the car with the Defendant because he did not question them and that it did not support probable cause. He said that the money he found on the Defendant was thirty-five $100 bills and did not include smaller bills. He said the

Defendant told him the money was his life savings. He said he did not write the Defendant's explanation in his affidavit because it did not help the case.

Sergeant Long testified that he was not familiar with a person named Michael Powell. He said that the prosecutor told him someone sent a sworn statement taking responsibility for the items recovered but that Sergeant Long did not know the person's name. He said that he was told the person was the driver of the car and that the copy of the traffic citation identified Michael Douglas as the driver. He said that he spoke to the driver's attorney after he learned the driver claimed ownership of the evidence and that he did not create a supplement to the file.

On redirect examination, Sergeant Long identified a Smith & Wesson semiautomatic handgun, an empty magazine that fit the handgun, and ten nine-millimeter rounds he recovered from the glove box and which were claimed by the Defendant. He said the gun, the magazine, and the ammunition were the same items noted in his affidavit of complaint. On recross-examination, Sergeant Long said he did not submit the handgun, the drugs, or the drug paraphernalia to the TBI for testing. He said the gun was found in the glove box, not on the Defendant's person.

Brenda McNeil testified that she was the evidence technician for the Metro Narcotics Unit of the Madison County Sheriff's Department and that she received all the drugs, drug paraphernalia, and other drug evidence from the arresting officers, which she secured in the drug vault. She said the drugs were tested by the forensic scientists at the TBI Laboratory in Memphis. She stated that she took the marijuana to the TBI in Memphis to be tested and returned it to Jackson after the testing and that the evidence was kept in the evidence locker in Jackson. She said that she was the only person who had control over it and that she brought it to court the day of the trial. She said that she brought other evidence with her to the trial but that the marijuana was the only evidence sent for testing.

TBI Forensic Scientist Shalandus Harris testified that she had worked at the TBI for over two years in the drug chemistry section. She said she performed a microscopic test and a color test on the drugs and confirmed the sample was marijuana. She said the marijuana weighed 26.1 grams.

On cross-examination, Agent Harris testified that after she prepared her report, another forensic scientist reviewed it by conducting a screening test and a confirmatory test to ensure the procedures and the policies were followed and the information on the submission form matched the information on the report. She said the TBI had a "point two percent" degree of error for the measurement of the weight of a controlled substance. She said she had never had any reported miscalculations or misinterpretations.

Michael Powell testified for the defense that he and the Defendant had been friends for about nine or ten years. He said the Defendant lived in the Frazier section of Memphis with his girlfriend and his daughter and was a licensed armed security guard. He said that on October 17, 2010, he received a ticket for driving with his lights off and that the Defendant was "locked up." He said that he was the driver of the car but that the ticket was dismissed because the officer wrote "Michael Douglas," the wrong name, on the ticket.

Mr. Powell testified that on October 17, 2010, he was excited to get to Jackson because it was Lane College's homecoming and he was supposed to promote a party. He said he did not want to travel alone and asked his cousin and the Defendant to come with him. He said he had to "beg" the Defendant to come because the Defendant was a "serious type" and not the type to attend parties. He said that he could not enter the party he was scheduled to promote and that he turned off the headlights on his car as they sat in the parking lot listening to the radio. He said that he remembered another party was scheduled nearby and that he left without turning on his headlights. He said he drove about one block before the police stopped him. He said he was nervous because he had not told anyone he had "a little personal stash" under the seat. He said that the officer knocked on his window and asked if he knew his headlights were off. He said that the officer walked back to his car and that four or five police cars "rushed up on" them.

Mr. Powell testified that under the passenger seat, he had a yellow "Athlete Foot" bag containing marijuana, a scale, five or six cigarillos, some sandwich bags, and other personal items like cologne. He said that the police asked them to step out of the car, that his cousin was at the hood of the car, that he was on the sidewalk, and that the Defendant was at the back of the car. He said he was not handcuffed and could not hear what was happening with the other two. He said the yellow bag was under the passenger seat and would not have been easily noticed by someone sitting in the car. He said he wanted to apologize to the Defendant because the Defendant was his friend and was on trial for Mr. Powell's actions. He said it was his responsibility and was not the Defendant's fault. He said he did not tell his cousin or the Defendant that the drugs were in the car.

Mr Powell testified that the drugs were under the passenger seat, that he was the driver, and that the yellow bag was his. He said that he had about an ounce of marijuana in the bag and that it cost about $65. He said the cigarillos were used to roll marijuana to smoke it. He said that he smoked marijuana about twice per week but that he had smoked less since the traffic stop. He said that he usually bought a "nice portion" to last a long time to prevent his returning frequently to the dealer. He identified the digital scale as the one from his yellow bag and said that he used the scale to weigh the amount he wanted to roll in the cigarillo and the amount the dealer sold him.

Mr. Powell testified that on the night he was stopped, he had the opportunity to tell the officers the items were his but that he did not because he was a coward. He said he was driving his car, did not want to go to jail, and would have lost a lot. He said he was selfish that night. He stated that he told the Defendant he was going to confess because it was on his conscience and that he contacted a lawyer to determine the procedure for dealing with the situation. He identified his lawyer, who was in the courtroom, and said he provided counsel an affidavit confessing to this crime in July. He said that he did not come forward earlier because he "chickened out" but that the drugs and the contents of the yellow bag belonged to him, not to the Defendant. He read his affidavit to the jury and confirmed that it was accurate. He said, though, that he did not hear the Defendant say the drugs were his but that an officer told him the Defendant claimed the drugs.

On cross-examination, Mr. Powell testified that he did not tell the officer his name was incorrect on the citation because he did not look at it. He agreed that he signed the bottom of the citation and that the officer gave him a court date. He said he returned to Jackson the next day to assist the Defendant's family in bailing the Defendant out of jail because the Defendant was his friend but denied he helped pay the bond. He said that he had an opportunity to review his affidavit before he signed it but that he looked at the affidavit again and wanted to clarify that he did not hear the Defendant say the drugs were his but instead an officer told him the Defendant claimed the drugs. He said he was first made aware that the Defendant claimed possession of all the marijuana when the Defendant was arrested and the officer told him. He said he thought the Defendant claimed what was on his person but was charged with possessing the entire amount from the yellow bag. When the prosecutor asked which version to believe, Mr. Powell said that everything was his and that he did not hear the Defendant confess.

Mr. Powell testified that he saw the officers handcuff the Defendant and place him in the patrol car. He agreed that he received a citation and was allowed to drive home. He admitted that he had smoked marijuana that night but not inside the car. He said he knew the Defendant had a marijuana cigarette in his sock because they had smoked it outside the car when they were parked. He said they got the marijuana from some friends in the parking lot. He said he knew people in Jackson and came to Jackson to promote a party. He said that promoting a party did not mean he was running it but that he invested about $300 in the party. He said he was unaware the Defendant had money with him and thought the Defendant had thrown away the marijuana cigarette.

Mr. Powell testified that they left the parking lot to go to another party in Jackson and that he texted someone to get the address. He admitted he was texting while driving and driving under the influence of marijuana. He said that he was being honest and that his lawyer had informed him he was admitting crimes. He said his lawyer helped write his

affidavit. He said that he did not know whether he should go to Jackson or Memphis to confess and that he met with his attorney. He said that his attorney prepared the statement but that he told counsel what to write in the statement. He said counsel found the case number to list on his statement because he did not know it.

Mr. Powell testified that the statement was dated July 25, 2011, that he did not come to the Defendant's preliminary hearing, and that he was not aware of the preliminary hearing or the indictment. He said the Defendant told him what was happening in his case but did not ask him to make a statement. He said that about three months before the trial, he told the Defendant he was going to do something about the situation because he did not want to see his friend go to jail for something he did. He said the Defendant explained to him how much trouble he faced and told him he was going to be taken from his family for something Mr. Powell did.

Mr. Powell testified that he went home after the Defendant was arrested and returned to Jackson the next day to ensure the Defendant made bond. He said he did not take any steps toward confessing from October 2010 until June 2011. He said he was curious about the case but did not ask the Defendant. He said he met with his lawyer after the Defendant told him how much trouble the Defendant faced and how the Defendant's family was jeopardized. He said that he spoke to the Defendant a couple of times between October and July but that he acted distant toward the Defendant. He said that the October incident was on his mind but that he did not mention it during his conversations with the Defendant because he did not want to discuss it. He said the Defendant talked to him about the case around the time it was set for trial but denied he was helping the Defendant. He said that the marijuana was his and that he would not confess to a felony if the marijuana was the Defendant's. He said that he needed help coming forward with his confession because he did not know the process and that the Defendant told him to contact a lawyer, which he did. He agreed his written statement in the affidavit was not completely correct because he did not hear the Defendant confess. He denied he had nothing to lose by coming forward because he had a family and a job.

On redirect examination, Mr. Powell testified that he did not hear the Defendant confess the drugs were his. He said he had not testified in court before and was not familiar with the process. He said that he attended college one semester but dropped out and that no one had promised him anything for testifying at the trial. He understood he could go to jail.

Upon this evidence, the jury convicted the Defendant of possession of a firearm with the intent to go armed during the commission of a dangerous felony, possession of marijuana with the intent to sell, possession of marijuana with the intent to deliver, and possession of drug paraphernalia. The trial court merged the convictions for possession of marijuana with

the intent to sell and possession with the intent to deliver. The court sentenced him to four years' confinement for the possession of a firearm conviction to run consecutively to a two-year sentence for the possession of marijuana conviction and concurrently to an eleven-months, twenty-nine-day sentence for the possession of drug paraphernalia conviction, for an effective six-year sentence.

## I

The Defendant contends that the evidence is insufficient to support his convictions. The State counters that the evidence is sufficient to support the convictions. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. *See State v. Bland*, 958 S .W.2d 651, 659 (Tenn. 1997).

"'A crime may be established by direct evidence, circumstantial evidence, or a combination of the two.'" *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998)). Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). The standard of proof is the same, whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Id.* (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

The Defendant argues throughout his brief that "[t]he standard of review in determining the sufficiency of the evidence on appeal is that 'all other reasonable theories except that of guilt are excluded,'" citing *State v. Jones*, 901 S.W.2d 651, 659 (Tenn. 1997). In *State v. Dorantes*, our supreme court recognized that the United States Supreme Court had specifically rejected the notion that the State had an affirmative duty to rule out every hypothesis other than guilt. 331 S.W.3d 370, 380 (Tenn. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). Our supreme court noted that the "reasonable hypothesis" language had been used particularly in Tennessee criminal cases when sufficiency of the

circumstantial evidence was at issue. *Id.* The court adopted the same standard as the United States Supreme Court that circumstantial and testimonial evidence should be treated the same when weighing the sufficiency of the evidence. *Id.* The Defendant's argument that the *Jones* standard applies is incorrect.

In the light most favorable to the State, Mr. Powell was stopped by Officer Groves for driving with his headlights off. Sergeant Long responded to the traffic stop and smelled marijuana through the passenger window when speaking to the Defendant. Sergeant Long asked the Defendant to step out of the car, and the Defendant told him marijuana was in his sock. The Defendant also told Sergeant Long that he had his handgun permit and that his gun was in the glove box. The officers searched the car, and Officer Stines found a yellow bag containing marijuana, a scale, five or six cigarillos, and sandwich bags. After the search, the Defendant claimed the contents of the yellow bag were his. Agent Harris tested the substance, confirmed it was marijuana, and said it weighed 26.1 grams.

Relevant to the Defendant's conviction for possession of a firearm with the intent to go armed during the commission of a dangerous felony, "[i]t is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." T.C.A. § 39-17-1324(a) (2010). A "dangerous felony" is defined as a felony that involves the possession of a controlled substance with the intent to sell, manufacture, or distribute it. *Id.* § 39-17-1324(i)(1)(L). Possession of marijuana not less than one-half ounce, which is 14.175 grams, nor more than ten pounds, which is 4535 grams, is a Class E felony. *Id.* § 39-17-417(g)(1). The Defendant's convictions for possessing 26.1 grams of marijuana with the intent to sell and deliver were his qualifying dangerous felonies under the statute.

The Defendant concedes that the State proved he possessed a gun but contends that the State failed to prove that he had the specific intent to go armed when he sold marijuana. Intent may be inferred from both direct and circumstantial evidence. *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). The necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proven by circumstances surrounding the carrying of the weapon. *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). The purpose of going armed should be determined from the facts of each particular case. *Hill v. State*, 298 S.W.2d 799 (Tenn. 1957).

The proof shows that the Defendant's loaded gun was found in Mr. Powell's glove box in front of the Defendant's seat. Mr. Powell testified that the Defendant was a licensed armed security guard and "always traveled with his gun." The Defendant admitted in his brief that the State proved the Defendant owned the gun. From these facts and circumstances, the jury could have concluded that the Defendant possessed the gun and

intended to "go armed" because the evidence showed that he always traveled with his gun, that the gun was loaded, and that the gun was in the glove box immediately in front of and within reach of the Defendant. The jury also found the Defendant guilty of possession with the intent to sell marijuana. Although the Defendant argues he carried the gun for his job as an armed security guard and the evidence shows he had a valid handgun permit, "the plain language of subsection (a) does not evidence a legislative intent to differentiate between lawful or unlawful possession of a firearm." *See State v. Samuel Alan Ireson*, No. E2010-01648-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App. June 10, 2011). The jury could have reasonably concluded that the Defendant possessed the gun with the intent to go armed during the commission of a dangerous felony.

Relevant to the Defendant's conviction for possession with the intent to sell marijuana, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T. C. A. § 39-17-417 (a)(4). The Defendant's possession with the intent to sell 26.1 grams of marijuana is a Class E felony.

The Defendant concedes in his brief that the State proved the substance found in Mr. Powell's car was marijuana, that the marijuana weighed 26.1 grams, and that the Defendant owned the marijuana but contends that the State did not prove the Defendant sold or delivered the marijuana as required by Tennessee Code Annotated section 39-17-417(a)(2) and (3). Counts One and Two of the indictment charged that the Defendant "did unlawfully and knowingly possess with the intent to sell a controlled substance" and "did unlawfully and knowingly possess with the intent to deliver a controlled substance." After the trial court merged his convictions for possession of marijuana, the judgment for the conviction states that the offense was possession of marijuana with the intent to sell. The conviction was not an offense under section 39-17-417(a)(2) and (3) as the Defendant argues but was an offense under section 39-17-417(a)(4).

"It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T. C. A. § 39-17-419 (2010); *see State v. Eddie Lattimore*, No. M2008-02124-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App. Nov. 18, 2010). At the trial, TBI Forensic Scientist Shalandus Harris testified that the substance recovered from the car was marijuana and weighed 26.1 grams. Sergeant Chris Long said that he found marijuana, a digital scale, and plastic sandwich bags in the yellow bag and that in the Defendant's sock, he found thirty-five $100 bills, which were folded a couple of times and wrapped with a rubber band. Sergeant Long said the scale was not illegal by itself but could be used by a marijuana smoker or dealer. Taking this evidence in the light most favorable to the State, a reasonable jury could

have inferred that these items, along with the amount of marijuana recovered, showed that the Defendant possessed with the intent to sell 26.1 grams of marijuana. *See State v. Ross*, 49 S.W.3d 833, 845 (Tenn. 2001). This court cannot substitute its own inferences for those drawn by the jury. *See, e.g.*, *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

Relevant to the Defendant's conviction for possession of drug paraphernalia, "it is unlawful for any person . . . to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." T.C.A. § 39-17-425(a)(1). The Defendant does not address his specific argument with his conviction for possession of drug paraphernalia. In the light most favorable to the State, the record shows that the Defendant claimed ownership of the contents of the yellow bag, which included the marijuana, a scale, five or six cigarillos, and sandwich bags and that he had thirty-five $100 bills and a burnt marijuana cigarette on his person. The Defendant told Sergeant Long that a friend gave him the scale to weigh his marijuana for personal use because he liked his marijuana cigarettes to contain exactly one gram. Sergeant Long said that the cigars and the digital scale seized were not illegal by themselves but that they could be used by a marijuana smoker or dealer. Mr. Powell admitted that the cigarillos were used to roll marijuana to smoke it. The evidence sufficiently supports the jury's finding that the Defendant possessed drug paraphernalia.

We conclude that the record supports the jury's findings. The evidence is sufficient to sustain the Defendant's convictions for possession of a firearm with the intent to go armed during the commission of a dangerous felony, possession of marijuana with the intent to sell, and possession of drug paraphernalia.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE