WALTER G. HILL

*v.*

STATE OF TENNESSEE.

(*Nashville*, December Term, 1956)

Opinion filed February 8, 1957.

HUGH W. STANTON, and HUGH W. STANTON, JR., Memphis, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendant below, Walter G. Hill, was convicted on a two-count indictment being charged with the unlawful carrying of a pistol for which offense he was found guilty, fined $50 and given a fifteen day jail sentence.

The defendant was convicted under T.C.A. Section 39-4901 which provides as follows:

"Carrying dangerous weapons — Penalty. — Any person who shall carry in any manner whatever, with the intent to go armed, any razor * * *, or any pistol or revolver of any kind whatever, except the army or navy pistol which shall be carried openly in the hand, or any other dangerous weapon, shall be guilty of a misdemeanor."

This statute exempts from penalty the carrying of an army or navy pistol openly in the hand.

Article 1, Sec. 26 of the Constitution of 1870, gives to citizens of the State of Tennessee the "right to keep and to bear arms for their common defense;". And the Legislature the "power, by law, to regulate the wearing of arms with a view to prevent crime."

There is a conflict as to whether this is an army or navy pistol, and the jury resolved this against the contention of the defendant.

The proof shows that the defendant carried the pistol openly in the hand.

It will be noted in reading the above section of the Code that the carrying of dangerous weapons in any manner whatever *with the intent to go armed* is the gravamen of the offense.

We gather the purpose of going armed from the facts of each particular case.

Several witnesses were introduced in the case. The witness, Goodwin, for the State, testified that on the day alleged in the indictment that he, in the capacity of supervisor, and one of his employees, Hall, were at the apartment house in question doing some work.

The proof shows that the defendant below came to the doorway of an apartment where he was sleeping and asked Goodwin and his assistant to stop making so much noise; that they paid no attention to him and he soon appeared again in the hallway demanding that the noise be stopped, whereupon Mr. Goodwin advised the defendant to stay in his apartment or he would ''get the hell knocked out of him.''

Shortly thereafter the defendant appeared again in the *hallway* with a pistol which he pointed at Goodwin and used threatening language. The latter backed away and called the City Police. This statement by Goodwin was verified by his assistant.

Mr. Dalton, a policeman, testified that upon his arrival at the defendant's apartment he knocked on the door and advised the defendant that he and his assistant were the police officers. Shortly thereafter defendant opened the apartment door and stood with his right hand down

by his side and slightly behind him, holding the pistol in his hand which he later drew to a level position and pointed at the officers. This witness testified that the pistol was a .38 caliber Smith and Wesson, chrome-plated, and with a modified front sight and plastic handles. The officers took the pistol away from defendant with the use of some force and found that it was loaded with six live cartridges. One Shoemaker, another witness for the State, testified that the pistol was not the type commonly used by the Armed Services and that it did not have an Army or Navy serial number on it as all Service pistols have.

The defendant, Hill, testified that he did not come into the hallway of the apartment with his pistol and that he thought "it would be good psychological effect" to take the pistol out and show it to the workmen, and stated that he made some statement to the effect that he wanted quiet in the hallway.

Mr. Buckley, a member of the Armed Services, testified for the State saying that the pistol was of the type commonly used in the U.S. Marine Air Force except for the chrome-plated, modified sight and plastic handles.

It was the insistence of the defendant below that this was an Army or Navy pistol and therefore there was no violation of the statute.

▆▆ The jury found from the proof, evidently, that this was not an Army or Navy pistol and they further found that the defendant was carrying the pistol for the purpose or intent of going armed.

In *Brooks v. State,* 187 Tenn. 361, 215 S.W.2d 785, 786, the defendant was indicted for pointing pistols at certain

officers from a point in his own front yard, and in that case the Court upheld a jury verdict to the effect that Brooks was carrying a pistol for the purpose or with an intent to go armed. Among other things the Court said:

"The fact that the carrying was in the yard of defendant's home is no defense * * * nor that the pistols were carried openly and not concealed."

█ The whole purpose of the Section of the Code was to denounce the carrying of a pistol for the purpose or the intent of going armed.

The offense charged here is that the defendant was armed with a pistol in the hallway of the apartment house. This would be about the same situation if the accused was the occupant of a room in a hotel and came out into the hallway with a pistol.

The purpose of the statute was to discourage the using of certain weapons which tends to lead to crime and we are of the opinion that the defendant has violated this Section of the Code.

It results that we must overrule the assignments of error and the judgment of the lower court is affirmed.