# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 5, 2015

## STATE OF TENNESSEE v. TASHA BRIGGS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 13-02244     J. Robert Carter, Jr., Judge**

───────────────

**No. W2014-01214-CCA-R3-CD  -  Filed October 6, 2015**

───────────────

A Shelby County Criminal Court Jury convicted the appellant, Tasha Briggs, of possession of a controlled substance with intent to sell, a Class E felony, possession of a controlled substance with intent to deliver, a Class E felony, and possession of a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony.  After a sentencing hearing, the trial court merged the convictions for possession of a controlled substance and sentenced the appellant to an effective four-year sentence to be served as three years in confinement followed by one year on probation.  On appeal, the appellant contends that the trial court improperly instructed the jury regarding the mens rea for the offense of possession of a firearm with the intent to go armed and that the evidence is insufficient to support the conviction.  Based upon the record and the parties' briefs, we conclude that the trial court committed reversible error regarding the instruction and that the case must be remanded for a new trial on the charge of possessing a firearm with the intent to go armed during the commission of a dangerous felony.  Moreover, upon remand, the trial court is to enter a single judgment of conviction for possession of a controlled substance with intent to deliver.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part and Reversed in Part, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

John P. Pritchard, Memphis, Tennessee, for the Appellant, Tasha Briggs.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Amy P. Weirich, District Attorney General; and Meghan Fowler, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## I. Factual Background

In May 2013, the Shelby County Grand Jury indicted the appellant for count one, possession of more than one-half ounce of marijuana with intent to sell; count two, possession of more than one-half ounce of marijuana with intent to deliver; and counts three, four, and five, possession of a firearm with the intent to go armed during the commission of a dangerous felony. Counts three, four, and five alleged, respectively, that the appellant possessed "a Butler Association 22 Caliber," "a Amadeo Rossi 32 Caliber," and "a JS Stallard Arms 9mm."

At trial, Detective Louis Mobley of the Memphis Police Department (MPD) testified that he was a member of the Organized Crime Unit's Narcotics Team 6. In September 2012, Team 6 conducted a narcotics investigation on an apartment on Dison Avenue and observed "vehicle and foot traffic going to this address . . . multiple times." Team 6 also sent a reliable confidential informant (CI) into the apartment to buy marijuana. After the controlled buy, Detective Mobley obtained a search warrant for the apartment. The Team executed the warrant at 12:15 p.m. on September 13, 2012. The appellant answered the door and seemed "kind of confused" about why the officers were there but was cooperative. The officers searched the appellant and patted her down for safety. The apartment was "very small" and consisted of a living room, a kitchen, and two bedrooms. The appellant lived there with her children.[1]

Detective Mobley testified that during the search, one of the officers found the following evidence on top of a freezer and in plain view: $4.00 cash, "loose" marijuana, five individually wrapped bags of marijuana, and a plastic bag containing several individually wrapped bags of marijuana in a shoebox. He described the freezer as four-feet tall and said it was in the kitchen. Detective Mobley stated that the individually wrapped bags "indicates individual sales of marijuana, it's not for personal use." The officers also found guns in the apartment.

On cross-examination, Detective Mobley acknowledged that he did not see the CI buy marijuana from the appellant. He stated that Team 6 conducted surveillance on the apartment for five days prior to the search and that "[t]here was traffic there at various times of the day." None of the guns were found to be stolen.

---

[1] The children were not present.

On redirect examination, Detective Mobley testified that the appellant "made a spontaneous utterance that all of the items belonged to her." Also, the officers found a piece of mail with the appellant's name and the apartment's address on it.

Sergeant Brian Memec of the MPD testified that he participated in executing the search warrant on September 13. When the officers arrived at the apartment, they knocked on the door and announced their presence, and the appellant answered the door. She let them in, and they handcuffed her for their safety. Sergeant Memec said that upon entering the apartment, a small kitchen was to the right and that "[a]s you came out of the kitchen towards the front door there was like a deep freeze that was there, and then a kitchen table." Sergeant Memec searched the living room area and a small closet in a hallway that led from the living room to two bedrooms. He found a Louis Vuitton purse in the closet and a clear, quart-size Mason jar containing individual bags of a green, leafy substance in the purse. Sergeant Memec also found cash, a white shoebox containing a loaded .357 revolver,[2] and a digital scale in the closet. Another detective found "a small single shot . . . Darringer type" .22 caliber pistol under a couch cushion in the living room. Sergeant Memec said that the second gun also was loaded, that he had trouble "[making] the gun safe," and that the appellant offered to unload it for him. He stated that the distance from the front door to the closet was about twelve feet and that the distance from the front door to the couch was about five feet. When asked how much time it would have taken to get from the front door to the back bedroom, he stated, "Not long at all."

On cross-examination, Sergeant Memec testified that he attempted to interview the appellant, that he read an advice of rights form to her, and that she invoked her rights. He did not question her further.

On redirect examination, Sergeant Memec acknowledged that Team 6 found four guns in the apartment. He said that in filling out background information for the appellant's advice of rights form, he asked about her job, and she told him that she was unemployed.

Detective Darryl Dotson of the MPD testified that he also participated in executing the search warrant and that he "located large sums of currency, a .9mm handgun and a small individually wrapped bag of marijuana." He said that the currency was "everywhere" in the apartment and that it totaled about $1,100. He found the gun in the same closet searched by Sergeant Memec. The gun was on the closet's top shelf and was loaded with one live round in the chamber, meaning it was "ready to be used," and two live rounds in the magazine. The marijuana was in a brown purse that was in a rocking

---

[2] The appellant was not charged with any offense related to the .357 revolver.

chair in the living room. Detective Dotson acknowledged that he heard the appellant say that everything he found belonged to her.

Detective William Vrooman of the MPD testified that after the appellant's apartment was secured on September 13, he photographed the evidence, which included four guns. One of the guns was a loaded revolver found in a dresser in the northeast bedroom. Detective Vrooman said that the he could smell marijuana in the apartment and that it smelled "[l]oud," which he explained was "the street term for high grade marijuana."

On cross-examination, Detective Vrooman acknowledged that he never saw the appellant in possession of any of the evidence. He also acknowledged that the officers were prepared to "ram" the front door of the apartment. However, they did not have to force entry because the appellant opened the door for them.

Detective Eric Dobbins of the MPD testified that he was present during the search and was the evidence custodian. As officers found evidence, they would bring it to him, and he would "log it, where it was found, who found it, the state that it was found in." He later transported the evidence to the police department and had the property and evidence attendants test and weigh the plant material. The plant material tested positive for marijuana and weighed 76.2 grams. He said that based on his experience and training, the individual bags of marjiuana seized from the apartment were not consistent with personal use. The total amount of cash found in the apartment was $1,134, and the officers found four guns.

Agent Shalandus Garrett of the Tennessee Bureau of Investigation testified as an expert in forensic science that she analyzed the plant material. First, she performed a macroscopic examination of the material and "saw some hairs that [were] consistent with marijuana, so in this case it was positive for marijuana." She also performed a color test known as the modified Ducat Noida Lavene Test, and it too was positive for marijuana. Agent Garrett weighed the plant material. The tested material weighed 14.92 grams, and the non-tested material weighed 46.23 grams.

At the conclusion of Agent Garrett's testimony, the State rested its case. The appellant did not present any witnesses, and the jury convicted her as charged of count one, possession of more than one-half ounce of marijuana with intent to sell; count two, possession of more than one-half ounce of marijuana with intent to deliver; and count three, possession of the Butler Association .22 caliber pistol with the intent to go armed during the commission of a dangerous felony. The jury was unable to reach a unanimous verdict on counts four and five regarding her possessing the Rossi .32 caliber revolver or the .9mm JS Stallard, so the trial court declared a mistrial as to those counts. After a

sentencing hearing, the court sentenced the appellant to three years in confinement for possessing a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony. The court merged the convictions of possessing marijuana with intent to sell and deliver, Class E felonies, and sentenced the appellant to one year on probation to be served consecutively to the three-year sentence.

A. Mens Rea

The appellant contends that the trial court improperly instructed the jury that the offense of possession of a firearm with the intent to go armed during the commission of a dangerous felony could be committed if she acted intentionally, knowingly, or recklessly. She claims that the statute for the crime specifies that she had to act intentionally; therefore, the court's instructing the jury on the additional mens rea of knowingly and recklessly lowered the State's burden of proof. The State argues that the trial court properly instructed the jury and that, in any event, any error was harmless. We conclude that the trial court erred and that we cannot say the error was harmless.

A defendant has a "constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). We have previously noted that "[w]e must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). Generally, a charge "is erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). "In order to determine whether a conviction should be reversed on the basis of an erroneous instruction to the jury, this Court must consider whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." State v. James, 315 S.W.3d 440, 446 (Tenn. 2010) (citations omitted). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005).

Relevant to this case, Tennessee Code Annotated section 39-17-1324(a) provides that "[i]t is an offense to possess a firearm with the intent to go armed during the commission of . . . a dangerous felony." A "dangerous felony" includes the possession of a controlled substance with the intent to sell or deliver. Tenn. Code Ann. § 39-17-1324(i)(1)(L). Tennessee Code Annotated section 39-11-301(c) provides, "If the definition of an offense . . . does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state."

In support of her argument that possession of a firearm with the intent to go armed during the commission of a dangerous felony does not include the mens rea of knowingly or recklessly, the appellant notes that the Tennessee Pattern Jury Instruction for the crime of employing a firearm during the commission of a dangerous felony, set out in Tennessee Code Annotated section 39-17-1324(b)(1), explicitly includes that a defendant "acted either intentionally, knowingly or recklessly," whereas the pattern jury instruction for the crime at issue omits that language. See T.P.I.-Crim. 36.06(c). The State notes in support of its argument that the pattern jury instructions for other offenses involving possession of a weapon with the intent to go armed provide that the defendant "acted either intentionally, knowingly or recklessly." See T.P.I.-Crim. 36.03(a) (possessing or carrying weapons with the intent to go armed on school property as provided by Tenn. Code Ann. § 39-17-1309(b)); 36.04 (possessing or carrying weapons with the intent to go armed on the grounds of any public parks, playgrounds, etc. as provided by Tenn. Code Ann. § 39-17-1311(a)); 36.08 (carrying or possessing a firearm or club with the intent to go armed as provided by Tenn. Code Ann. 39-17-1307(a)(1)).[3]

The confusion over the mens rea of the offense at issue stems from the element "with the intent to go armed." In State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014), decided after the appellant's trial, our supreme court addressed whether possession of a firearm with the intent to go armed during the commission of a dangerous felony was a lesser-included offense of employing a firearm during the commission of a dangerous felony. In analyzing the issue, the court "parsed" the offenses into their separate elements and specifically stated that the "mens rea element" for the possession offense was that "the possession of the firearm was with the 'intent to go armed'" while the mens rea element for the employment offense included intentionally, knowingly, or recklessly pursuant to Tennessee Code Annotated 39-11-301(c). Fayne, 451 S.W.3d at 370. Thus, the court clarified that the mens rea element for the possession offense contains only one mental state. As a result, we conclude that the trial court erred by instructing the jury that the appellant could be guilty of possessing a firearm with the intent to go armed during the commission of a dangerous felony if the jury found that she acted knowingly or recklessly.

The State contends that any error was harmless because the evidence overwhelmingly established that the appellant possessed the handgun with the intent to go armed. We disagree. The incorrect jury instruction regarding the appropriate mental state lessened the State's burden of proof. Accordingly, a new trial on the charge is warranted.

---

[3] The State also notes, however, that footnote 2 for each of the pattern instructions provides that the Tennessee Criminal Pattern Jury Instructions Committee is of the opinion that the definitions of "knowingly" and "recklessly," "although statutorily required," are in conflict with the elements of the offense and that some judges believe only "intentionally" should be instructed.

B. Sufficiency of the Evidence

The appellant claims that the evidence is insufficient to support her conviction of possessing a firearm with the intent to go armed during the commission of a dangerous felony. She acknowledges that the proof is sufficient to show that she constructively possessed the gun but claims that it fails to show she did so "with the intent to go armed." The State argues that the evidence is sufficient. Although we have concluded that the appellant is entitled to a new trial on the charge, we will address the sufficiency issue to facilitate any further appellate review. We conclude that the evidence is sufficient.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

As stated previously, Tennessee Code Annotated section 39-17-1324(a) provides that "[i]t is an offense to possess a firearm with the intent to go armed during the

commission of . . . a dangerous felony." Possession of the firearm may be actual or constructive. Fayne, 451 S.W.3d at 370. "[A]ctual possession refers to physical control over an item." Id. However, constructive possession requires only that the defendant had "the power and intention at a given time to exercise dominion and control over . . . [the item] either directly or through others." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (internal quotations and citations omitted). As this court has explained,

> Intent may be inferred from both direct and circumstantial evidence. State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). The necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proven by circumstances surrounding the carrying of the weapon. Cole v. State, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). The purpose of going armed should be determined from the facts of each particular case. Hill v. State, 201 Tenn. 299, 298 S.W.2d 799 (Tenn. 1957).

State v. Demario Darnell Thompson, No. W2012-00642-CCA-R3-CD, 2013 WL 3776985, at *10 (Tenn. Crim. App. at Jackson, July 15, 2013), perm. to appeal denied, (Tenn. 2013).

In State v. James Robert Christensen, Jr., No. W2014-00931-CCA-R3-CD, 2015 WL 2330185, at *10 (Tenn. Crim. App. at Jackson, May 14, 2015), perm. to appeal granted, (Tenn. 2015), this court found the evidence sufficient to show that the defendant intended to go armed when he "had loaded firearms within reach and/or actually in his hands as the methamphetamine lab was processing in the same small mobile home." Similarly, in State v. Bobby Daniel Pettie, No. M2014-00113-CCA-R3-CD, 2015 WL 351229, at *8 (Tenn. Crim. App. at Nashville, Jan. 28, 2015), perm. to appeal denied, (Tenn. 2015), this court found the evidence sufficient to support the defendant's conviction when he constructively possessed a shotgun under the passenger seat of his truck and had items used to manufacture methamphetamine in the passenger compartment and bed of the truck. In Demario Darnell Thompson, No. W2012-00642-CCA-R3-CD, 2013 WL 3776985, at *10, this court held that the evidence was sufficient when the jury convicted the defendant of possessing marijuana in a car with intent to sell and the proof showed that the defendant, who was a licensed armed security guard, always traveled with his gun, that the gun was loaded, and that the gun was in the glove box immediately in front of him and within reach. No. W2012-00642-CCA-R3-CD, 2013 WL 3776985, at *10. Finally, in State v. Demetrius M. Clark, No. W2011-00524-CCA-R3-CD, 2012 WL 5845617, at *24 (Tenn. Crim. App. at Jackson, Nov. 19, 2012), this court found the evidence sufficient when the proof showed that the defendant was found in his boxer shorts and a t-shirt in his girlfriend's residence with various items,

including cocaine, hydrocodone, digital scales with a white powdery residue, a loaded .38 revolver, and more than $4,600 cash.

Turning to the instant case, the evidence shows that the appellant sold marijuana from her apartment and that she kept a loaded, one-shot pistol under a couch cushion in her living room. The front door opened into the living room, and the appellant had easy access to the weapon. Officers found a bag of marijuana and cash in a brown purse in the living room and individually packaged bags of marijuana on a freezer nearby in the kitchen, and the jury convicted the appellant of possessing the drug with intent to sell and deliver. Thus, taken in the light most favorable to the State, we conclude that a reasonable jury could conclude from the facts and circumstances of this case that the appellant intended to go armed during the commission of the dangerous felony. Therefore, the evidence is sufficient to support the conviction.

During sentencing, the trial court merged the appellant's conviction of possession of a controlled substance with intent to sell in count one into her conviction of possession of a controlled substance with intent to deliver in count two. Nevertheless, the court sentenced the appellant to one year for each of the offenses and entered separate judgments of conviction. "[T]his court has stated that the proper practice is to enter only one judgment form with a notation therein that the alternative count is merged." State v. Jose L. Hidalgo, No. M2011-01314-CCA-R3-CD, 2013 WL 1197726, at *11 (Tenn. Crim. App. at Jackson, Mar. 26, 2013). Therefore, the case is also remanded to the trial court for entry of a single judgment.

### III. Conclusion

Based upon the record and the parties' briefs, the appellant's conviction of possession of a firearm with the intent to go armed during the commission of a dangerous felony is reversed, and the case is remanded to the trial court for a new trial on that offense. Upon remand, the trial court also is to enter a single judgment to reflect the merger of count one into count two.

_____
NORMA MCGEE OGLE, JUDGE