IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2018

## STATE OF TENNESSEE v. DONALD RAY MAHAFFEY

**Appeal from the Circuit Court for Bedford County
No. 18299    Forest A. Durard, Jr., Judge**

_____

### No. M2017-00387-CCA-R3-CD

_____

Defendant, Donald Ray Mahaffey, was convicted of the sale of more than 0.5 grams of methamphetamine; delivery of more than 0.5 grams of methamphetamine; conspiracy to sell and deliver more than 0.5 grams of methamphetamine; possession of a firearm during the commission of or attempt to commit a dangerous felony; unlawful possession of a weapon after having been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon; possession of marijuana for resale; and possession of drug paraphernalia. The trial court imposed an effective sentence of thirty-two years in the Department of Correction. On appeal, Defendant argues that the evidence was insufficient to support his conviction for possession of a firearm during the commission of a dangerous felony. Having reviewed the entire record and the briefs of the parties, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

M. Wesley Hall IV, Jr., Unionville, Tennessee, for the appellant, Donald Ray Mahaffey.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert James Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*FACTS*

On February 13, 2015, Special Agents Shane George and Jose Ramirez of the 17th Judicial Drug Task Force were working with Heather Prince, a confidential informant ("CI"), to initiate a controlled buy of methamphetamine from Defendant. Ms. Prince had

known Defendant, whose nickname was "Bubba," for four or five months. She admitted that she was an addict, and Defendant was her dealer. Ms. Price said that prior to February 13, 2015, she had seen Defendant a couple of times a month, and she was using methamphetamine on a daily basis. Defendant had also approached her in the past and asked her to be a distributor for his drug trade.

Special Agent George gave Ms. Prince a recorder, and she placed several phone calls to Defendant throughout the afternoon and early evening hours of February 13, 2015, to discuss the time and place to meet and the amount of drugs to buy. Special Agent George instructed Ms. Prince to request $300 worth of "ice methamphetamine," also known as an "8 ball" or 3 grams of ice methamphetamine. Special Agent George explained at trial that ice methamphetamine is normally 97 to 100% pure methamphetamine. Ms. Prince told Defendant that she was buying the drugs to give to a gentleman from Smyrna and that she would receive $330 for the transaction. Ms. Prince told Defendant that she would give him $300, and she would keep $30. Initially, Defendant said that the deal would occur in Room 22 of the Magnolia Motel on South Cannon Boulevard in Shelbyville. However, he later changed the location to the Kangaroo Market located at the corner of Lewis Avenue and South Cannon Boulevard approximately two blocks from the motel. He instructed Ms. Prince to park on the side of the building next to the gas pumps.

Special Agents George and Ramirez met Ms. Prince at approximately 6:15 p.m. at the Fly Building parking lot. Special Agent George searched Ms. Prince and gave her $300 in recorded bills. Special Agent Ramirez then drove Ms. Price to the Kangaroo Market. Defendant's son, Timothy Wyatt, arrived at the market and met with Ms. Prince. Mr. Wyatt told Ms. Prince that Defendant was back at the motel. The two went inside the store, and the drug transaction took place inside the bathroom. Special Agent Ramirez observed Ms. Prince and Mr. Wyatt walk into the market, and he lost sight of them when they went into the bathroom. Ms. Prince and Mr. Wyatt then walked back out of the store, and Ms. Prince returned to Agent Ramirez's vehicle with three single bags of crystal methamphetamine. Each bag contained approximately 1 gram of methamphetamine. One of the bags had a small tear in it where Mr. Wyatt took a small amount of the drug for himself. Special Agent Ramirez drove back to the parking lot to meet with Special Agent George, and Ms. Prince gave the three bags of methamphetamine and an audio recorder to Agent George. Ms. Prince was again searched to make sure that she did not have other drugs or money.

Timothy Miller, Assistant Director of the 17th Judicial District Drug Task Force, conducted surveillance on Room 22 of the Magnolia Hotel on February 13, 2015, and was in contact with Special Agents George and Ramirez. Assistant Director Miller saw Mr. Wyatt leave Room 22, and he got into a vehicle registered to Defendant. He saw Mr. Wyatt later return to the motel and walk back inside Room 22. At approximately 11:00

p.m., Assistant Director Miller saw Defendant, Mr. Wyatt, and Zachary Strickland, a known methamphetamine addict, leave the motel in Defendant's vehicle. Assistant Director Miller, Special Agent George, and Special Agent Ramirez followed the vehicle and then decided to initiate a traffic stop. Mr. Wyatt was driving the vehicle, and he did not immediately pull over so Special Agent George pulled in front of the vehicle to stop it. Defendant was sitting in the front passenger seat, and Mr. Strickland was sitting in the back. Mr. Wyatt was searched and a small amount of "ice methamphetamine" was found on his person, which Special Agent George considered to be a "user" amount. Defendant was found with $1,662.00 in currency, including the recorded bills from the transaction with Ms. Prince.

Defendant, Mr. Wyatt, and Mr. Strickland were taken back to Room 22 of the Magnolia Motel. Mr. Strickland had begun acting strange during the stop, and he was eventually transported to the emergency room for a drug overdose. Defendant and Mr. Wyatt both waived their *Miranda* rights, and they gave permission for the agents to search the motel room. Defendant directed the agents to a nightstand in the room that contained a loaded .25-caliber semi-automatic pistol, one-half ounce of marijuana, drug paraphernalia consisting of glass pipes and partial straws, and digital scales. There was a large number of small bags of marijuana that appeared to have been filled from a larger pink zipper bag. According to Special Agent George the marijuana "was packaged for obvious resale." Defendant and Mr. Wyatt were both interviewed, and admitted that they were both selling methamphetamine and marijuana. Defendant said that he rented the motel room, and he owned and possessed the gun. Mr. Wyatt also claimed ownership of the gun, and Assistant Director Miller felt that the two men were trying to protect each other. Special Agent Laura Cole of the Tennessee Bureau of Investigation Crime Lab later tested the substance sold to Ms. Prince and determined that it was methamphetamine, and the total amount was a little more than 3 grams. Special Agent Cole testified that the 1 large bag and five smaller bags of a green leafy substance was determined to be marijuana, and the total weight was more than 23 grams.

The agents released Defendant and Mr. Wyatt after interviewing them with the understanding that the two men would keep in contact with the agents and discuss their drug source. Neither Defendant nor Mr. Wyatt got back in touch with the agents. Defendant and Mr. Wyatt were both charged with possession of the gun, and Mr. Wyatt later pled guilty to possession of the gun. Ms. Prince testified that prior to February 13, 2015, she had seen Defendant with a small silver pistol similar to the one introduced at trial that he attempted to sell to her.

*Analysis*

Defendant argues that the evidence presented at trial was insufficient to support his conviction for possession of a firearm during the commission of a dangerous felony.

More specifically, Defendant contends that the evidence does not show his intent to go armed. We disagree.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." T.C.A. § 39-17-1324(a). "A felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance . . ." is a dangerous felony. Possession of a firearm during the commission of a dangerous felony requires proof that: (1) the defendant possessed a firearm; (2) the possession was with the "intent to go armed;" and (3) the first two elements occurred during the commission or attempted commission of a "dangerous felony." T.C.A. § 39-17-1324(a); *See also State v. Fayne*, 451 S.W.3d 362, 369-70 (Tenn. 2014).

Possession may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Constructive possession of a firearm "may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm." *Key v. State*, 563 S.W.2d 184, 188 (Tenn. 1978). "'Elements of possession for purposes of constructive possession are questions of fact for the jury and are rarely susceptible to direct proof.'" *State v. Gerald Dewayne Triplett*, No. W2015-00163-CCA-R3-CD, 2015 WL 9489506, at *5 (Tenn. Crim. App. Dec. 29, 2015) (quoting *State v. Ronald*

*Killebrew*, No. W2003-02008-CCA-R3-CD, 2004 WL 1196098, at *3 (Tenn. Crim. App. May 26, 2004)). "Possession need not be exclusive and may be exercised jointly with more than one person." *State v. Richards*, 286 S.W.3d 873, 885 (Tenn. 2009). Concerning a firearm, "constructive or joint possession may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm." *Key*, 563 S.W.2d at 188.

Also, the proof must show a defendant's "intent or purpose of being or going armed." *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). This court has explained how the intent to go armed may be established:

> Intent may be inferred from both direct and circumstantial evidence. *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). The necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proven by circumstances surrounding the carrying of the weapon. *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). The purpose of going armed should be determined from the facts of each particular case. *Hill v. State*, 201 Tenn. 299, 298 S.W.2d 799 (Tenn. 1957).

*State v. Demario Darnell Thompson*, No. W2012-00642-CCA-R3-CD, 2013 WL 3776985, at *10 (Tenn. Crim. App. July 15, 2013).

In this case, Defendant gave permission for agents to search Room 22 of the Magnolia Motel. He directed the agents to a nightstand drawer that contained a loaded .25-caliber semi-automatic pistol, marijuana totaling more than 23 grams that was packaged for resale, plastic "ziptop" bags, drug paraphernalia, and digital scales. Defendant admitted that he rented the motel room and that he owned and possessed the pistol. Defendant also admitted that he was selling marijuana and methamphetamine. This evidence was sufficient to prove that Defendant possessed the pistol with intent to go armed during the commission of the marijuana offense. *See State v. George P. Watkins, III*, No. W2015-02095-CCA-R3-CD, 2017 WL 1294890, at *7 (Tenn. Crim. App. April 5, 2017)(Evidence was sufficient to show Defendant's intent to go armed where "police found a loaded firearm, multiple types of ammunition, at least 45.32 grams of marijuana, small plastic bags, and a digital scale" in the defendant's bedroom. A second digital scale was found in the defendant's dining room, and the defendant gave a written statement admitting that the drugs and firearm belonged to him). Although Defendant's son, Mr. Wyatt, also claimed ownership of the pistol, this does not negate Defendant's possession of the weapon since possession can be joint. *Richards*, 286 S.W.3d at 885. Based on the evidence presented, a rational trier of fact could conclude that Defendant possessed a firearm during the commission of a dangerous felony.

**CONCLUSION**

Based on the foregoing, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE