IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2025

**STATE OF TENNESSEE v. HEATHER FISHER**

**Appeal from the Circuit Court for Rhea County**
**No. 23-CR-110      John Harvey Cameron, Judge**

_____

**No. E2024-01758-CCA-R3-CD**

_____

A Rhea County jury convicted the Defendant, Heather Fisher, of possession with intent to sell or deliver a controlled substance, schedule II, to wit: methamphetamine in an amount in excess of 0.5 grams (count one); three counts of possession of a schedule IV drug with intent to sell or deliver (alprazolam, diazepam, and clonazepam) (counts three through five); possession with intent to sell or deliver a schedule VI controlled substance, to wit: marijuana in excess of 0.5 grams or more (count six); possession of a weapon during commission of a drug offense (count seven); maintaining a drug involved dwelling (count eight); and possession of unlawful drug paraphernalia (count nine), for which she received an effective thirteen year sentence.[1] In this appeal as of right, the Defendant challenges only her conviction in count seven for possession of a weapon during the commission of a drug offense and argues (1) the evidence failed to establish that she possessed a weapon and failed to establish that she had the requisite intent to go armed; and (2) that the trial court erred in determining that the offense of carrying a weapon was not established by the evidence and that it erred in excluding carrying a weapon as a lesser-included offense of count seven.[2] Upon our review, we affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and MATTHEW J. WILSON, J., joined.

Kyle Cokkinias, Cleveland, Tennessee, for the appellant, Heather Renee Fisher.

---

[1] The record does not include a disposition for count two.

[2] We have reframed the Defendant's issues presented for clarity. In doing so, we have combined issues one and three from the Defendant's brief because they were duplicative.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Courtney C. Lynch, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Because the Defendant does not contest the facts underlying her drug-related convictions in counts one, three, four, five, six, eight, and nine, we will focus our factual recitation of the proof adduced at the Defendant's October 23, 2024 trial on count seven.

Cody Massey, a narcotics detective with the Rhea County Sheriff's Department, testified that on February 2, 2023, he executed a search warrant between ten and eleven o'clock in the morning at the Defendant's residence. He identified the Defendant in court and stated she was present when the search warrant was executed. Detective Massey identified photographs of the Defendant's home, admitted as exhibits, and described the layout of the home to the jury. He said the Defendant's home appeared "cluttered" and the only area he searched was the mudroom. Detective Massey identified a backpack hanging on the back of a door in the mudroom, which contained a plastic cylinder-style cannister with multiple internal compartments. Inside each compartment were pills or methamphetamine wrapped in a red, yellow, or green cellophane plastic bag. He said the green bag contained methamphetamine. Detective Massey said the pills recovered from the cannister were not the type that are prescribed by a pharmacist, and he did not recover any bottles typically associated with prescription drugs from the area where the canister was found. The bags recovered from the canister were given to Detective Wilkey. The Defendant was on the back patio during the search of her home. Although there were other people present at the time of the search, Detective Massey did not know their names or their connection to the home.

Detective Jesse Wilkey of the Rhea County Sheriff's Department, the lead investigator in this case, testified as an expert in narcotics investigations. Detective Wilkey identified the Defendant in court and stated that she was present at the time of the search of her home. He said six other individuals were present in the Defendant's home at the time of the search and that they appeared to be there to use drugs. He agreed that the Defendant shared her home with her husband and their minor daughter and that the Defendant's husband was not present at the time of the search. He identified the pills recovered from the Defendant's home as alprazolam, clonazepam, and diazepam; all schedule IV narcotic substances. Although these substances can be obtained legally through a prescription by a physician, they were not contained in a legitimate pill bottle when recovered from her home. Detective Wilkey also identified various items associated with the sale of drugs that were recovered from the Defendant's home including an orange

hideaway Sunkist can, a black set of digital scales, and a box containing sandwich bags in assorted colors of red, yellow, and green. These items were recovered from the mudroom where the backpack containing the cylinder cannister was located. He said the bags were significant because they were consistent with packaging of methamphetamine for resale. He said the digital scales were used to weigh the marijuana for sale and had marijuana residue on it. Detective Wilkey stated $446 was seized from the Defendant's wallet in her master bedroom.

Detective Wilkey identified various containers of marijuana recovered from the Defendant's home. Several jar-like containers of marijuana were recovered in the mudroom, and several other jars of marijuana were recovered from an outbuilding of the Defendant's home. Detective Wilkey also noted a small amount of marijuana in an unmarked pill bottle recovered from the Defendant's master bedroom. A .38 caliber revolver, a .45 caliber handgun, and ammunition for each weapon were recovered from the Defendant's master bedroom. The .38 caliber revolver was recovered from a nightstand, and the .45 caliber handgun was recovered from near the bathroom area. Each weapon was loaded and located in plain view. Asked what "tools" are typically found with a person engaged in the sale of narcotics, Detective Wilkey stated weapons and digital scales, both of which were recovered from the Defendant's home. Detective Wilkey also explained that a person engaged in the sale of narcotics would have weapons "to basically protect their stash location, to keep from being robbed . . . [to] be used against law enforcement."

Detective Wilkey opined that the street value of one of the pills that was recovered from the search ranged from ten to twenty dollars per milligram and that it varied based on the strength of the pill. He opined that the methamphetamine that was recovered in this case had a street value of $175 and could have been the basis of eight individual methamphetamine transactions. Detective Wilkey collected the substances recovered from the search of the Defendant's home and transported them to the Tennessee Bureau of Investigation for analysis. The contents of the green bag discovered inside the cylinder was tested and confirmed to contain 1.75 grams of methamphetamine, and the suspected marijuana recovered from the Defendant's home was tested and confirmed as 93.14 grams of marijuana.

On cross-examination, Detective Wilkey confirmed that the weapons were recovered from the master bedroom. He denied that the .38 caliber revolver was located inside the nightstand and stated that both weapons were clearly visible. He agreed that the Defendant's husband lived at the home with the Defendant and that there were male items of clothing located in the master bedroom. He denied that the weapons belonged to the Defendant's husband because the Defendant told him that the weapons belonged to her when he asked her about them inside the bedroom. He did not do an "ATF trace" on the weapons because an ATF trace would only show who originally purchased the weapon.

He said the Defendant told him her grandfather had given her one of the weapons and that it was a revolver. Based on the totality of the circumstances, and in combination with the bags containing the illegal drugs, the digital scales, and drug packaging, Detective Wilkey opined that the weapon would have been used during the commission of a dangerous felony.

Detective Charlie Jenkins of the Rhea County Sheriff's Department testified that he was present during the search of the Defendant's home on February 2, 2023. Following the search of the Defendant's home, the Defendant was arrested and later agreed to an interview. Detective Jenkins provided the Defendant with Miranda warnings. The advice of rights form with the detective's signature and the Defendant's signature was admitted into evidence. The Defendant's interview was audio recorded and admitted as an exhibit at trial. The recorded interview is approximately 54 minutes long, and the Defendant is cooperative and friendly with the detectives. She admitted that the backpack recovered from her home and the illegal substances inside it belonged to her. She admitted that she had been engaged in the sale of drugs from her home for the last six months and provided the detectives with the names of her drug suppliers and several individuals who purchased drugs from her. Although the Defendant claimed the contents of the backpack, she denied that the syringes found during the search belonged to her. She stated that she had never worked outside of the home and that she began selling methamphetamine when her husband lost his job.

Upon hearing the above proof, the jury convicted the Defendant of the charged offenses. The Defendant later filed an unsuccessful motion for new trial, and this case is now properly before this court for review.

## ANALYSIS

**I. Sufficiency of the Evidence.** The Defendant contends the State failed to establish that she possessed a weapon during the commission of a dangerous felony. She asserts that while law enforcement recovered a weapon from a residence associated with her, there was no direct evidence linking her to the weapon at the time of the offense. She argues that mere presence of the weapon in the residence does not establish that she possessed the weapon. She also contends that the State failed to establish sufficient evidence that she had the requisite intent to go armed during the commission of a dangerous felony. The State argues, and we agree, that the evidence is sufficient to support the Defendant's conviction in count seven.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279

S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Dorantes, 331 S.W.3d at 379 (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). The jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

Regarding count seven, possession of a weapon during the commission of a dangerous felony, the State was required to prove beyond a reasonable doubt that the Defendant "possess[ed] a weapon with the intent to go armed during the commission of or attempt to commit a dangerous felony." T.C.A. § 39-17-1324(a). A dangerous felony is defined as "[a] felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance." Id. § 39-17-1324(i)(1)(L). Although not in dispute, the Defendant's conviction for possession with intent to sell or deliver a schedule VI controlled substance, to wit: marijuana in excess of 0.5 grams or more in count six qualifies as a "dangerous felony."

Possession of a weapon may be actual or constructive. State v. Fayne, 451 S.W.3d 362, 374 (Tenn. 2014). Actual possession "refers to physical control over an item." Id. at 370. On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [an object] either directly or through others.'" State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). It has also been defined

as "'the ability to reduce an object to actual possession.'" State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979)). "'Elements of possession for purposes of constructive possession are questions of fact for the jury and are rarely susceptible to direct proof.'" State v. Triplett, No. W2015-00163-CCA-R3-CD, 2015 WL 9489506, at *5 (Tenn. Crim. App. Dec. 29, 2015) (quoting State v. Killebrew, No. W2003-02008-CCA-R3-CD, 2004 WL 1196098, at *3 (Tenn. Crim. App. May 26, 2004)). "Possession need not be exclusive and may be exercised jointly with more than one person." State v. Richards, 286 S.W.3d 873, 885 (Tenn. 2009). Finally, constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing T.C.A. § 39-17-419).

The Defendant claims the State failed to prove (1) that she possessed the weapon; and (2) that she possessed the weapon with the intent to go armed during the commission of the felony drug offenses. We recognize that the proof must show a defendant's "intent or purpose of being or going armed." Cole v. State, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). This court has explained how the intent to go armed may be established:

> Intent may be inferred from both direct and circumstantial evidence. State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). The necessary intent to support a conviction for carrying a weapon with the intent to go armed may be proven by circumstances surrounding the carrying of the weapon. Cole v. State, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976). The purpose of going armed should be determined from the facts of each particular case. Hill v. State, 201 Tenn. 299, 298 S.W.2d 799 (Tenn. 1957).

State v. Thompson, No. W2012-00642-CCA-R3-CD, 2013 WL 3776985, at *10 (Tenn. Crim. App. July 15, 2013).

The evidence, when viewed in the light most favorable to the State, established that the police found two loaded weapons, matching ammunition, and marijuana in an unmarked pill bottle in the Defendant's master bedroom. In so much as the Defendant argues that she was not in possession of the weapons, Detective Wilkey testified that the Defendant admitted that both weapons belonged to her. He denied that the revolver belonged to the Defendant's husband because the Defendant told him that her grandfather had given it to her. Detective Wilkey stated that the revolver was recovered from the nightstand and that both weapons were in plain view at the time of the search. Accordingly, we conclude the Defendant had the ability to "exercise dominion and control" over the weapons recovered from her bedroom.

Regarding the Defendant's claim that the evidence did not support her intent to go armed, the evidence at trial established that alprazolam, diazepam, clonazepam, 1.75 grams of methamphetamine, plastic sandwich bags consistent with resale, various jars of marijuana, and a digital scale were found in the Defendant's mudroom. Several other jars of marijuana were also found in the outbuilding of the Defendant's home. A total of 93.14 grams of marijuana was recovered from the Defendant's home. The Defendant admitted in her recorded statement to police that she had been selling marijuana from her home for over six months and that the drugs recovered from her home belonged to her. Based on the Defendant's admission to Detective Wilkey that the weapons recovered from the master bedroom belonged to her, we have already concluded that she was in constructive possession of the weapons. A predicate felony for the weapon offense is the Defendant's conviction of possession of marijuana with the intent to sell, which prohibits a defendant from knowingly possessing a controlled substance with the intent to sell it. T.C.A. § 39-17-417(a). Possession of 93.14 grams of marijuana, a controlled substance, with the intent to sell is a Class E felony. Id. §§ 39-17-415(a)(1), 39-17-417(g)(1). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Id. § 39-17-419; see Thompson, 2013 WL 3776985, at *11.

Based on the amount of marijuana and other drugs found at the Defendant's home, a reasonable inference can be made that she was engaged in the sale of narcotics. Detective Wilkey also stated that the "tools" typically found with a person engaged in the sale of narcotics include weapons and digital scales, both of which were recovered from the Defendant's home. Detective Wilkey explained that a person engaged in the sale of narcotics would have weapons "to basically protect their stash location, to keep from being robbed . . . [to] be used against law enforcement." Based on the totality of the circumstances, and in combination with the bags containing the methamphetamine, the other illegitimate prescription pills, the digital scales, and the drug packaging, Detective Wilkey opined that the weapons recovered in this case would have been used during the commission of a dangerous felony. This court has repeatedly held that the presence of the loaded revolver in close proximity to a substantial amount of marijuana, the plastic bags commonly used to package drugs, the digital scales, and the assorted ammunition is sufficient evidence for the jury to infer that the defendant possessed a weapon with the intent to go armed during the commission of a dangerous felony. See State v. Watkins, No. W2015-02095-CCA-R3-CD, 2017 WL 1294890, at *6-8 (Tenn. Crim. App. Apr. 5, 2017); State v. Mahaffey, No. M2017-00387-CCA-R3-CD, 2018 WL 3752306, at *3 (Tenn. Crim. App. Aug. 7, 2018). Based on the evidence presented at trial, the jury could have found that the Defendant possessed the weapon with the intent to go armed during the commission of the marijuana offense. Accordingly, the Defendant is not entitled to relief.

**II. Lesser-Included Offense.** The Defendant contends that the trial court erred in determining that the offense of carrying a weapon was not established by the evidence at trial and that the trial court erred in excluding carrying a weapon as a lesser-included offense of count seven possession of a weapon during the commission of a dangerous felony. The State responds that the trial court properly determined that carrying a weapon is not a lesser included offense of possession of a weapon during the commission of a dangerous felony and that, in any case, this issue is waived because the Defendant failed to submit her request for the lesser-included offense in writing to the trial court. We agree with the State.

Tennessee Code Annotated section 40-18-110 governs jury instructions and provides, in pertinent part, as follows:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

T. C. A. §40-18-110 (b), (c).

The record shows that at the close of the proof and before providing the jury instructions in this case, the trial court gave the parties a proposed copy of the jury instruction and stated:

> I'm going to go ahead and let you know that, with respect to count 7, I have listed potentially as a lesser-included a count of carrying a weapon with intent to go armed. There's no proof that's been presented in this case that she possessed the weapon or went anywhere armed with the weapon, so I'm going to remove that from a lesser-included and remove it from the verdict form. I just wanted to tell you gentlemen that on the front end.

As correctly observed by the State, the Defendant did not provide the trial court with a written request to include carrying a weapon as a lesser included offense of count seven.

Indeed, the record shows the Defendant did not object to the trial court's exclusion of carrying a weapon as a lesser-included offense to possession of a weapon during the commission of a dangerous felony in count seven. The record also does not contain a copy of the jury instructions; however, the verdict forms reflect that there were no lesser-included offenses for count seven. Finally, we note that the Defendant did not raise this issue in her motion for new trial. See T.R.A.P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . occurring during the trial of the case . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); State v. Spadafina, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996) (concluding that the defendant's challenge to the trial court's failure to charge a lesser included offense was waived because it was not raised in a motion for new trial and the trial court was not given an opportunity to address the issue). For these reasons, we conclude that this issue has not been properly preserved and is therefore waived. The Defendant did not request or argue for plain error review in her principle brief, and she failed to engage in the necessary analysis for disposition of this issue. Although the State placed the Defendant on notice and argued that this issue was waived in its brief, the Defendant did not acknowledge the State's waiver argument by reply brief. Under these circumstances, we decline further review of this issue and conclude that the trial court properly excluded carrying a weapon as a lesser-included offense of possession of a weapon during the commission of a dangerous felony. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authority and conclusion of law, we affirm the judgments of the trial court.

s/ Camille R. McMullen
CAMILLE R. MCMULLEN, JUDGE